2014 VT 48

# State of Vermont v. Todd Hemingway

[97 A.3d 465]

No. 11-233

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed May 9, 2014

442

*Deborah A. Celis*, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Marshall Pahl*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals from the trial court's order revoking his probation. On appeal, defendant argues that he did not receive a "certificate explicitly setting forth" his probation conditions, as required by 28 V.S.A. § 252(c), and that he did not have notice of the conditions. He also contends that the court did not make adequate factual findings regarding the credibility of

defendant's wife, who is the complainant, and that the court's findings were erroneous. We agree with defendant's claim as to the failure to comply with the requirements of § 252(c) and reverse on that ground.

¶ 2. On April 12, 2010, defendant pled guilty, by plea agreement, to first-degree aggravated domestic assault for strangling the complainant, and to five counts of violations of conditions of release. The plea agreement, signed by defendant and his attorney, contained a special condition of probation that defendant not abuse or harass the complainant. At the beginning of the plea hearing, in defendant's presence, the State noted orally on the record the conditions of release, which included "no abuse or harassment of [the complainant]." After a plea colloquy, the judge said, "Your probation will be for a period of at least ten years. And the other conditions we've described here all apply." The court accepted the plea agreement and sentenced defendant to five-to-fifteen years, all suspended but forty days to serve. Defendant did not receive a "certificate explicitly setting forth the conditions upon which he [was] released." 28 V.S.A. § 252(c). The State concedes that defendant never signed a probation order.

¶ 3. In July 2010, defendant and the complainant had an altercation in which the complainant alleged that defendant became violent. In the beginning of August, the complainant advised the probation office that defendant continued to call her, drive by her house, and follow her friends. He was then arrested for a violation of probation. In September, the State filed a violation of probation complaint against defendant. A violation of probation merits hearing was held on March 3, March 30, and April 28, 2011.

¶ 4. At the merits hearing, defendant's probation officer first testified that he had the opportunity to meet with defendant and to review defendant's conditions of probation. Later, the probation officer was asked whether he had reviewed the conditions of probation with defendant. The probation officer answered, "I don't recall if I did or not, if we specifically went over — over those conditions." The court asked the probation officer how defendant knew "what the conditions of probation were," and the probation officer replied, "I know — how does he know, I don't know."

¶ 5. The complainant testified about the July 2010 incident as follows. Defendant became upset when the complainant went to a fair at the end of July. When she returned from the fair, defend-

ant began calling her and her family members. He then drove to the home at which the complainant was staying and began to yell at her and call her vulgar names. She got in a vehicle with defendant, and he continued to berate her during the drive and after they arrived back at the complainant's home. Defendant slapped the complainant in the face and grabbed her neck.

¶ 6. The complainant also testified that defendant had contacted her and her supervisor at the campground where she worked during the summer of 2010, that he threatened to burn down the campground, and that her supervisor would not rehire her because of her relationship with defendant. She further testified that, in the past if she had been upset with someone, she had hit herself and then claimed that someone had assaulted her. She testified that she was currently upset with defendant. She testified that she had recanted abuse allegations before "because of the kids and other reasons" and "[b]ecause he would always tell me that he was sorry . . . I felt bad for the girls and I was with him and I just wanted him to get better." She testified that she was scared of defendant.

¶ 7. Defendant's mother testified that she saw no physical contact between the complainant and defendant on the day of the fair, and that she did not believe defendant had assaulted the complainant in the past. The complainant's mother testified that the complainant tells the truth sometimes, and sometimes she does not, "just like everybody else." The complainant's mother also testified that the complainant had previously asked her to "say whatever [she] could" to keep defendant out of jail, and that the complainant had previously recanted allegations of abuse. By way of stipulation, the complainant's campground supervisor's deposition testimony was admitted. The supervisor stated that defendant was very polite, that she would not rehire the complainant because of the complainant's character, and that defendant did not threaten to burn down the campground.

¶ 8. The court first found that defendant was on probation and that certain conditions of probation were imposed. The court cited *State v. St. Francis*, 160 Vt. 352, 354, 628 A.2d 556, 557-58 (1993), reasoning that defendant had notice of, and agreed to the conditions, because he signed a plea agreement that was accepted and approved by the court and in which defendant agreed not to abuse or harass the complainant. The court further found that

defendant violated the no-abuse-or-harassment condition. The court found that the complainant "has a spotted history of credibility," that she may have lied to the State and the defense regarding defendant's activities at her workplace, and that she has lied and had others lie in order to get the State to dismiss previous charges against defendant. Nevertheless, the court credited the complainant, stating that her "testimony regarding the activity surrounding the evening at the fair had the ring of truth." Ultimately, the court sentenced defendant to serve the underlying sentence of five-to-fifteen years.

¶ 9. ■ Defendant challenges his conditions of probation on two grounds: (1) defendant never agreed to the condition at issue so he is not bound by it; and (2) the court failed to comply with the written notice requirements of 28 V.S.A. § 252(c), and that failure makes the condition unenforceable against him. Defendant also argues that the court did not make adequate factual findings on the complainant's credibility and that the court's findings are clearly erroneous. The State contends that defendant had notice of his probation conditions because he negotiated and signed a plea agreement, which contained the no-abuse-or-harassment clause, and that the court's findings are adequate and supported by the evidence. Because we agree with defendant that the court's failure to comply with § 252(c) makes the probation condition unenforceable, we do not reach the parties' arguments as to defendant's actual notice of, or agreement with, the condition.

¶ 10. The question of whether the failure to comply with 28 V.S.A. § 252(c) renders a revocation of probation invalid is a legal question, which we consider de novo. See *State v. Smith*, 2011 VT 83, ¶ 4, 190 Vt. 222, 27 A.3d 362.

¶ 11. ■ The statute at issue provides that a defendant who is placed on probation "shall be given a certificate explicitly setting forth the conditions upon which he or she is being released." 28 V.S.A. § 252(c). Generally, the imperative "shall" indicates that the provision is mandatory. See *In re Green*, 2006 VT 88, ¶ 2, 180 Vt. 597, 908 A.2d 453 (mem.). Accordingly, § 252(c) mandates that a defendant receive a certificate detailing his or her conditions of probation; however, the statute does not provide an explicit consequence for the failure to comply with its terms. The issue, therefore, is the correct remedy for statutory noncompliance, as it is undisputed that defendant in this case did not receive the

requisite certificate. As detailed below, we are persuaded by defendant's arguments that the trial court's failure to comply with the statutory requirement makes the condition unenforceable.

¶ 12. ■ We have recently addressed the question of when failure to comply with a statutory notice requirement renders notice invalid in Vermont. In *In re Soon Kwon*, 2011 VT 26, ¶ 14, 189 Vt. 598, 19 A.3d 139 (mem.), we held that the question of whether actual notice is sufficient or whether statutory notice is required is "dependent on the statutory scheme and the content of the legislation." In that case, which arose in the landlord-tenant context, we noted that the section of the Landlord-Tenant Act that provided for notice was a "consumer protection provision," *id.* ¶ 15, and recognized a "clear rationale in this context for requiring specific methods of giving notice," which was that the purpose of the statute was to bring about the swift return of security deposits. *Id.* ¶ 19. We reasoned that "[t]he required methods of returning the deposit are likely to cause expeditious receipt; other methods may not." *Id.* Consequently, we found that strict compliance with the statutory provision was necessary to render the notice valid.

¶ 13. We reiterated the holding of *Soon Kwon* in *Daniels v. Elks Club of Hartford*, 2012 VT 55, ¶ 35, 192 Vt. 114, 58 A.3d 925, but found that in that context — notice from a junior creditor to a mortgagee of his or her interest in a property — the statutory requirement "appears to have the primary purpose of ensuring that mortgagees not be burdened with constantly monitoring for attachments before issuing advances." *Id.* ¶ 36. Therefore, we reasoned, "[a]ccepting actual notice in the place of written notice does not undermine this purpose because it does not impose any additional burden upon the mortgagee." *Id.*

¶ 14. In this case, we must similarly look for special characteristics of the subject matter and structure of the statute that shed light on whether the Legislature intended actual notice to suffice. In this area of law, there are two reasons for us to insist on § 252(c) compliance — consisting of a clear, written probation agreement — to find that a probation condition is effective.

¶ 15. ■ ■ First, a probationer may not challenge a probation condition in defense of a violation complaint, but must do so earlier, before noncompliance is alleged. *State v. Austin*, 165 Vt. 389, 401-02, 685 A.2d 1076, 1084-85 (1996). To do so, the proba-

tioner must have the exact language of the condition, not the general description in a plea agreement or the description given orally at sentencing. In this case, the majority of the special probation conditions contained in the plea agreement were worded differently in the probation order. The wording of § 252(c) shows that the Legislature intended that defendant receive in writing the exact wording of the conditions by its requirement that the certificate *"explicitly* set[ ] forth the conditions upon which he or she is being released." (Emphasis added.) Without enforcement of this requirement, defendant will lose the opportunity to challenge probation conditions because he or she will not know that they were imposed. Essentially, that is what occurred here, where twenty probation conditions were imposed on defendant without notice.[1]

¶ 16. ██ The second reason, however, is probably the more important one. In light of what is at stake for the probationer — loss of liberty for a violation — it is vital that the probationer have a clear and certain understanding of the obligations assumed. Endorsing a requirement that probation conditions be in writing, Professor LaFave observed that "when that is not done the probationer will probably misunderstand the precise terms of his obligations." 6 W. LaFave, J. Israel, N. King & O. Kerr, Criminal Procedure § 26.9(a), at 861 (3d ed. 2007). Indeed, probation revocation cases that have come before us in which the scope and nature of the probationer's obligation is in dispute show the need for clear probation obligations and notice of what those obligations are.

¶ 17. A good example of such a dispute is seen in the recent decision in *State v. Blaise,* 2012 VT 2, 191 Vt. 564, 38 A.3d 1167 (mem.), which dealt with oral instructions given by a probation officer pursuant to a probation condition requiring compliance with any such instructions. We acknowledge that the statute does not require such instructions by a probation officer to be in writing, but the confusion in *Blaise* caused by insufficient written instructions demonstrates the type of dispute that this Court would

---

[1] See *infra,* ¶ 18 (describing the standardized probation agreement forms used in this case). In theory, each probation order is the order of a judge, and each order can be different. In reality, the order is produced by the court's computer system, with the only variation being in the number of conditions and the wording of some of them.

regularly find itself policing if we did not require statutory written notice of probation conditions. The probation officer in that case purported to enter into a written contract with the probationer with respect to the most important probation conditions, but the terms of the contract were sparse, incomplete and vague. Thus, the trial court relied upon the testimony of the two probation officers who worked on defendant's case, whose memories of their oral instructions to the probationer were also incomplete and vague. In a split decision, a majority of this Court found that the evidence, either the writing or the testimony, did not support the State's claim of the probation conditions that defendant was alleged to have violated. The majority concluded, with respect to the main condition at issue, that it did not require that defendant attend a particular treatment program that he had chosen voluntarily to attend but stated only that attendance at that program met the applicable probation condition. *Id.* ¶ 20. The dissent responded: "It is not a finer point of the Geneva Convention we are interpreting, but an everyday probation condition. Its terms and requirements were plain enough to the defendant, the officer, and the court." *Id.* ¶ 35 (Burgess, J., dissenting). The lesson of the confusion and the ultimately divided decision in *Blaise* is that we need clear, explicit terms in writing.

¶ 18. This case similarly presents a compelling example of that need. The first page of the plea agreement states in summary terms the six additional probation conditions defendant will agree to for the three offenses covered by that page. The second page, which is separately signed by defendant, the prosecutor, and the judge, covers three additional offenses but contains no special probation conditions for those offenses. On the backs of both pages is a list of the standard conditions that will be imposed by the court. Not all the standard conditions ultimately included in the court order are stated on this back side. At the change-of-plea hearing the prosecutor described the six additional probation terms to be imposed as "the probation conditions" and never mentioned the standard probation conditions. The only statement from the judge was: "And the other conditions we've described here all apply," even though the judge had described no probation conditions. We recognize that the probation condition for which there is the strongest claim that defendant had actual notice is the one at issue, at least as to the three offenses covered by it. The statement of this condition in the plea agreement is the same

as in the probation order. If the violation were based on one of the standard conditions, the State would have to argue actual notice based on the boilerplate terms on the back of the plea agreement — that defendant probably never saw — and in the face of the prosecutor's statement that the probation conditions were the six special conditions, without mentioning the standard conditions. If the violation were based on a condition added by the court, with no notice to the defendant, this case would be even clearer.

¶ 19. ■ We conclude that the Legislature reached a balance between justice in the individual case and proper administration of the probation system by requiring that there be explicit, written notice of probation terms in every case. Turning this notice requirement into a paper tiger, by holding that there is no consequence for its violation, would undermine its purpose. The main incentive to obey the command would be eliminated, and we would be required to determine what actual notice was given based on an imprecise record. We decline to perpetuate a world in which it could take a divided vote of this Court to figure out the terms of probation.

¶ 20. The State relies in particular on our decision in *St. Francis*, 160 Vt. 352, 628 A.2d 556, to argue that the conditions of probation are effective at the moment they are read aloud in open court — at the change-of-plea hearing — rather than at the moment the probation order is signed. That case, however, is fully consistent with our decision today. In *St. Francis*, the defendant signed a probation order on the same day he was sentenced. The issue in that case was whether his probation could be revoked for acts that occurred before he was officially on probation and before he signed a "probation contract," but after he had been sentenced and signed a probation order. We held that the probation order itself was sufficient basis on which to revoke that defendant's probation, even prior to the beginning of the probationary period. *Id.* at 355, 628 A.2d at 558. Thus, the obvious distinguishing factor between *St. Francis* and this case is that the defendant in *St. Francis* had, in fact, signed a probation order issued by the court.

¶ 21. The State also argues that the plea agreement, signed by defendant and the prosecutor prior to the sentencing hearing, is enforceable as a contract in its own right and therefore may be used to prove that defendant violated his conditions of probation.

In this case the plea agreement, which was signed by defendant, contained the same condition that the State is attempting to enforce in the unsigned probation order. In essence, the State is arguing that we ignore § 252(c) or hold that a violation of the statute does not invalidate a condition if there is a plea agreement containing the same condition. This argument is a variation of the State's argument that actual notice should be sufficient, irrespective of compliance with § 252(c), and we reject it for the same reason.

¶ 22. ■ ■ Additionally, we reject the State's argument because plea agreements — although binding on the prosecutor — are not binding on the sentencing court. V.R.Cr.P. 11(e)(2). If the court accepts a plea agreement, it is bound to adopt a disposition "provided for in the plea agreement or a less onerous disposition." V.R.Cr.P. 11(e)(3). Thus, the requirement that defendant be provided with a "certificate explicitly setting forth the conditions upon which he or she is being released," 28 V.S.A. § 252, is not satisfied by the plea agreement, because the conditions of release are ultimately still set by the court at sentencing, and not by the prosecutor during plea negotiations. The conditions of release thus do not necessarily reflect all the prosecutor seeks.[2] The terms of the plea agreement, therefore, may not be used alone to prove a violation of probation; only a signed probation order may be so used. None of the cases cited by the State persuade us to ignore this explicit requirement of § 252.

¶ 23. ■ In sum, we uphold defendant's challenge based on the failure to meet the requirements of § 252(c). Without the explicit written notice required by law, defendant's violation of probation cannot stand. Because we reverse on this ground, we do not reach the other claims defendant makes on appeal.[3]

*Reversed.*

¶ 24. **Reiber, C.J.**, dissenting. While defendant did not receive a formal certificate setting forth the conditions of his probation,

___

[2] The State's general assertion that "[t]he special conditions of the order simply mirror those contained on the plea agreement" may reflect common practice, but may not be taken as a foregone conclusion.

[3] In reaching this result, we have not considered either the 911 call transcript or the letter contained in the State's printed case, nor have we relied upon the State's characterization of the execution of plea agreements and probation orders contained in its brief. Thus, we deny defendant's motion to strike as moot.

there is no question that he had actual notice of the plea condition that he refrain from abusing and harassing his wife, the victim of his domestic violence. Not only was this an obvious restriction on defendant's conduct given the nature of his offense, but the condition was stated orally at the change-of-plea hearing, written on the plea agreement, which defendant signed, and contained in the resulting probation order. The main purpose of the statutory requirement is to provide defendants with notice of their probation conditions. Because defendant had actual notice of the condition against abusing or harassing his wife, the failure to provide a certificate was harmless and the condition can be enforced. I dissent.

¶ 25. The undisputed relevant facts demonstrate that defendant was well aware of the condition that he violated. Defendant pleaded guilty to violations of conditions of release and to first-degree aggravated domestic assault for strangling his wife. Not surprisingly, the plea agreement signed by defendant contained the following hand-written special condition "No abuse or harassment of [defendant's wife]." Defendant signed the plea agreement. At the plea hearing, the state's attorney explained the terms of the plea agreement, including the no-abuse-or-harassment condition. The court accepted the plea and sentenced defendant to five-to-fifteen years, all suspended but forty days to serve, and instructed that the condition would be imposed. The resulting probation order included the no-abuse-or-harassment condition. Defendant did not, however, receive a "certificate explicitly setting forth the conditions upon which he [was] released." See 28 V.S.A. § 252(c). After an altercation with his wife, defendant was charged with violating the no-abuse-or-harassment condition of his probation. Following a hearing, the court found defendant had notice of the conditions. The court found defendant violated his conditions and revoked his probation.

¶ 26. Defendant's defense to the probation violation is that he lacked notice of the condition precluding him from abusing or harassing his wife, the victim of his domestic assault. The majority does not reach the question of whether defendant had actual notice of the condition because it concludes that lack of a certificate invalidates the conditions as a matter of law. Such a technical and extreme reading of the statute is neither mandated by the statute's language nor necessary to effectuate the statute's purpose of providing notice of probation conditions to defendants.

Based on the court's findings that defendant had actual notice of the prohibition against abusing or harassing his wife, the failure to provide a certificate was harmless and the court's finding of a violation and consequent revocation of defendant's probation should be affirmed.

¶ 27. The relevant statute states: "When an offender is placed on probation, he or she shall be given a certificate explicitly setting forth the conditions upon which he or she is being released." 28 V.S.A. § 252(c). Ascertaining whether a statutory provision is mandatory or directory is a matter of legislative intent, which is gleaned from the statute's language and purpose. *In re Mullestein*, 148 Vt. 170, 174, 531 A.2d 890, 892 (1987). The difference between a mandatory and directory statute is the consequence for failing to perform the delineated duty. The difference rests on whether the failure to perform a statutory duty will invalidate the governmental action to which the requirement is related. 1A Sutherland Statutory Construction § 25:3 (7th ed. 2013).

¶ 28. Certainly, a statute's use of the term "shall" generally indicates that the provision is mandatory. See *In re Green*, 2006 VT 88, ¶ 2, 180 Vt. 597, 908 A.2d 453 (mem.) (concluding that elections statute using word "shall" and containing a specific consequence for failure to comply created a mandatory requirement). But, this is not the only relevant question. Even where a statute uses "shall," if it does not contain a consequence for failure to act, the provision is directory. See, e.g., *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 17, 188 Vt. 470, 13 A.3d 1075; *Mullestein*, 148 Vt. at 173-74, 531 A.2d at 892.

¶ 29. Here, the statute neither identifies a person or entity particularly charged with providing the certificate, nor does it prescribe a consequence for failing to give the certificate to a particular defendant. The lack of an express requirement to complete the duty and a specified consequence for failure to comply indicates a lack of legislative intent to create a mandatory requirement. *State v. Singer*, 170 Vt. 346, 348, 749 A.2d 614, 616 (2000). The majority's contrary conclusion runs counter to our case law.

¶ 30. Most importantly, the act of providing the certificate is not essential to the main purpose of the statute. If an action is essential to the main objective of the statute, then the statute is ordinarily mandatory and violation of its terms will invalidate sub-

sequent proceedings. *Warner v. Mower*, 11 Vt. 385, 394 (1839). If, however, the provision merely explains "the manner of doing a thing, and is not of the essence of the authority for doing it," the statute is directory and a violation will not invalidate subsequent proceedings. *Id.*

¶ 31. Here, the statute at issue falls into the latter category. The main purpose of the statute is to provide defendants with notice of probation conditions in accordance with due process requirements. See *State v. Gleason*, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) (holding that due process requires that defendant has fair notice of what acts will violate probation, and that instructions from probation officer can provide such notice). This is reflected in the limited discussion of § 252(c) in our cases. In *State v. Peck*, 149 Vt. 617, 547 A.2d 1329 (1988), this Court held that "due process requires that a convicted offender be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." *Id.* at 619, 547 A.2d at 1331. This Court described that such notice could be accomplished through the § 252(c) certificate requirement or it could "be provided by the instructions and directions given to defendant by his or her probation officer." *Id.* at 619-20, 547 A.2d at 1331. This indicates that § 252(c) is one, but not the sole, means to provide defendants with notice. Thus, where the statute is not followed, but the defendant otherwise receives notice of a condition, the subsequent proceedings to enforce the noticed condition are valid.

¶ 32. Absent consequences for noncompliance or a more definitive statement from the Legislature that it intended to invalidate probation violations where a certificate was not provided, § 252(c) should be construed in concert with the rest of the statutory scheme, which aims to effectuate general goals of rehabilitation and protection of the public. The same bill that included the certificate requirement also contained a general purpose section, which has changed little since its enactment. 1971, No. 199 (Adj. Sess.), § 20 (codified as amended at 28 V.S.A. § 1). The following section directs that the entire title shall be "construed in order to effectuate the general purposes," 28 V.S.A. § 2(a), which include "developing and administering a correctional program designed to protect persons and property against offenders of the criminal law and to render treatment to offenders with the goal of achieving their successful return and participation as citizens of the state and community." 28 V.S.A. § 1(a).

¶ 33. Therefore, probation has a rehabilitative purpose, but it is also intended to protect society. *State v. Lockwood,* 160 Vt. 547, 552, 632 A.2d 655, 659 (1993). Invalidating known conditions that were not provided in a certificate does not further the purpose of providing defendant with notice of his conditions, but actually interferes with the legislative purpose of protecting particular citizens and the public in general. See *Howard v. Banks,* 544 S.W.2d 601, 603-04 (Mo. Ct. App. 1976) (explaining that public policy may impel interpreting statute containing word "shall" as directory so that failure of public official to act does not prejudice rights of citizens having no direct control over officials). Here, the court's failure to provide a certificate caused defendant no harm since he was aware of the condition. On the other hand, invalidating the probation revocation based on the ministerial failure to provide the certificate prejudices the victim for whose protection the condition was imposed. Absent more specific direction from the Legislature, this Court should avoid a construction that elevates technicality over the general purpose of protection.

¶ 34. Several states with statutes requiring that a probationer receive a written statement of probation conditions have similarly held that the purpose of the statute is to provide defendants with notice of their probation terms, and conditions can therefore be enforced as long as a defendant receives actual notice. For example, in *People v. Zimmerman,* 616 P.2d 997 (Colo. App. 1980), the defendant argued that his conditions were unenforceable due to failure to provide notice as required by a statute that stated the defendant "shall be given a written statement explicitly setting forth the conditions on which he is being released." *Id.* at 999. The court concluded that the purpose of the statute was to provide defendants with notice of their probationary terms, and that where a defendant had actual notice, failure to comply with the statute did not require reversal. *Id.;* see also *State v. White,* 363 A.2d 143, 151 (Conn. 1975) (concluding that statute stating court "shall" deliver written copy of probation conditions to defendant was directory because it did not provide penalty, and enforcing condition against defendant who had actual notice of condition); *Seals v. State,* 700 N.E.2d 1189, 1190 (Ind. Ct. App. 1998) (rejecting defendant's claim that failure to provide him with written statement of conditions precludes court from revoking probation, and holding that failure was harmless where defendant was advised and acknowledged he understood condition); *Whitlow*

*v. Commonwealth*, No. 2002-CA-000683-MR, 2003 WL 21949135, at
*3 (Ky. Ct. App. Aug. 15, 2003) (holding statute was intended to
provide defendant notice, and failure to provide written statement
did not preclude enforcement of conditions where defendant had
actual notice).

¶ 35. Federal courts have uniformly reached the same result.
There is a similar requirement under federal law pertaining to
supervised release:

> The court shall direct that the probation officer provide
> the defendant with a written statement that sets forth all
> the conditions to which the term of supervised release is
> subject, and that is sufficiently clear and specific to serve
> as a guide for the defendant's conduct and for such
> supervision as is required.

18 U.S.C. § 3583(f). All the circuits to consider the issue have held
that the "ultimate goal" of this statute is to provide notice to the
defendant, and, therefore, if the defendant has actual notice of the
condition he is charged with violating, then the statute's purpose
is satisfied, and any error in providing a written statement is
harmless. See *United States v. Felix*, 994 F.2d 550, 551-52 (8th
Cir. 1993); see also *United States v. Arbizu*, 431 F.3d 469, 470-71
(5th Cir. 2005) (per curiam); *United States v. Ortega-Brito*, 311
F.3d 1136, 1138 (9th Cir. 2002); *United States v. Ramos-Santiago*,
925 F.2d 15, 17 (1st Cir. 1991).

¶ 36. The majority's reliance on *In re Soon Kwon*, 2011 VT 26,
189 Vt. 598, 19 A.3d 139 (mem.), is misplaced. In that case, this
Court considered a statute directing that a landlord "shall"
provide notice of a security deposit statement to former tenants
" 'by hand-delivering or mailing the statement . . . to the last
known address of the tenant.' " *Id.* ¶ 10 (quoting 9 V.S.A.
§ 4461(d)). The statute also explained that if a landlord failed to
return the security deposit with a statement within fourteen days,
" 'the landlord forfeits the right to withhold any portion of the
security deposit.' " *Id.* ¶ 17 (quoting 9 V.S.A. § 4461(e)). This Court
held that the statute created a bright-line rule and that even if a
tenant had actual notice, failure to comply with the notice
provision resulted in forfeiture of the deposit. In so holding, this
Court considered several factors. First, the statute had a con-
sumer-protection purpose, and the focus was on prompt return of
a deposit. *Id.* ¶¶ 15, 19. Second, the use of the word "shall" was

mandatory language that obligated compliance by the landlord. *Id.* ¶ 16. Third, in contrast to this case, the statute contained a consequence for failure to comply. *Id.* ¶ 17. Finally, also unlike this situation, the interpretation was consistent with the rest of the statutory scheme. *Id.* ¶ 18.

¶ 37. The only similar factor is that the statutes in both cases employ the word "shall." Unlike the statute in *Soon Kwon*, § 252 specifies no consequence for failure to provide a probation certificate. In addition, while the purpose of the statute in *Soon Kwon* was frustrated if strict compliance was not required, furthering the legislative purpose of requiring notice to probationers does not require that failure to provide a certificate makes the resulting conditions unenforceable. To the contrary, the majority's argument frustrates the purpose of the statute. This is not a consumer-protection statute, like the one in *Soon Kwon*. As explained above, the certificate requirement is part of a statutory scheme that aims to both assist defendants and protect the public. Therefore, here, the statute must be read with the protection goal in mind.

¶ 38. In more analogous circumstances, in several criminal cases, we have held that failure to provide notice as required by rule or statute is harmless error if the defendant had actual notice and did not suffer any prejudice from the omission. See *State v. Ingerson*, 2004 VT 36, ¶¶ 4-5, 176 Vt. 428, 852 A.2d 567 (holding that court's failure to read indictment in open court harmless error where defendant had actual notice of charges); *State v. Davis*, 165 Vt. 240, 251-52, 683 A.2d 1, 8 (1996) (concluding State's failure to amend information harmless where defendant knew State sought life imprisonment). Similarly, reversal based on failure to provide a certificate should only be granted in cases where the defendant was prejudiced because he had no notice of the condition.

¶ 39. The majority proffers several reasons to support its interpretation of § 252(c), but none are persuasive. The majority first posits that because probationers must make any facial challenge to a condition prior to its violation, the probationer requires notice of the condition's exact language. The majority states that without § 252(c)'s requirement that the defendant receive a certificate "defendant will lose the opportunity to challenge probation conditions because he or she will not know that they were imposed." *Ante*, ¶ 15. Certainly, if a defendant does not have notice of a condition, he or she cannot challenge it, but

it is also true that a condition cannot be enforced against a defendant without notice of the terms. *State v. Hammond,* 172 Vt. 601, 602, 779 A.2d 73, 75 (2001) (mem.) (explaining that due process requires that defendant know prior to probation revocation proceeding what conduct is forbidden). Because enforcement depends on notice, there is no circumstance under which a defendant will be bound by a condition that was not noticed. While a certificate is a means to provide such notice, it is not the sole avenue for giving defendant notice. An error in failing to comply with the statute's requirements is harmless if defendant received notice by some other means. Having received notice, he is in no lesser a position than an individual who received notice that complied with § 252(c).[4]

¶ 40. Moreover, strictly enforcing the § 252(c) certificate requirement does not ensure that the conditions provided therein will be unambiguous and clear, as asserted by the majority. *Ante,* ¶ 16. The majority cites *State v. Blaise,* 2012 VT 2, 191 Vt. 564, 38 A.3d 1167 (mem.), as an example of the type of confusion that may arise when conditions are not expressly certified in writing. In *Blaise,* a general condition requiring participation in counseling or training to the satisfaction of the probation officer was imposed. After the defendant was charged with violating conditions for failing to complete a particular program, he argued that the probation officer's instruction to attend the program was communicated either ambiguously or not at all. *Id.* § 13. The trial court found otherwise, but even assuming there was uncertainty in *Blaise,* it would not be averted by the majority's holding today. In *Blaise,* there was no question regarding whether the defendant received the required § 252(c) certificate; the issue was the meaning of the condition. Simply requiring conditions to be in writing and included in a certificate does not ensure that those

---

[4] The majority claims that this case is an example of how confusion in the conditions that were imposed may arise without a certificate because some conditions were stated orally at the change-of-plea hearing, some were included in the plea agreement, and others were on the probation order. It may be that where a condition was included only in a plea agreement and not read at the change-of-plea hearing or only included in the probation order, there would be insufficient notice to defendant, but that is certainly not the case here. The identical no-harassment-or-abuse condition was read at the change-of-plea hearing, included in the signed plea agreement, and written in the probation order. Based on these uncontested facts, the court properly found that defendant had notice of the condition.

conditions will be unambiguous and clearly stated. Conversely, even without a § 252(c) certificate, a condition can be plainly stated and understood by all parties, as the trial court here found.

¶ 41. Such was the situation in this case. While the majority claims that it wants to avoid perpetuating "a world in which it could take a divided vote of this Court to figure out the terms of probation," *ante*, ¶ 19, there is no question here about the condition at issue. Defendant was prohibited from harassing or abusing his wife, who was victimized by defendant's domestic violence. Defendant was so told in open court.

¶ 42. Finally, the majority's concern about providing conditions in writing does not necessitate its holding. Receiving the certificate is not necessary to the purpose of providing a defendant the conditions in writing even if this were the purpose of the statute. Here, the condition *was* contained in writing. It was set forth explicitly and identically in the plea agreement and in the probation order. The majority notes that conditions in a plea agreement are not always adopted verbatim in the probation order, and therefore without a certificate there could be confusion over the exact terms of a condition. This may be true in some circumstances, but it is certainly not in this case. Here, the condition in the plea agreement matched identically to the condition imposed by the court in the plea agreement.

¶ 43. The purpose of § 252(c) is to ensure that defendants have notice of their probation conditions. Without an express indication from the Legislature that it intended the notice requirement of § 252(c) to act as a strict bar against enforcement of probation conditions, defendants who know their probation bars certain conduct should not be immunized from the consequences of violating those conditions. To allow defendant to escape responsibility for violation of conditions known to him, but not received in a formal certificate, elevates procedure over substance. See *State v. White*, 363 A.2d at 151 ("Sentencing should not be a game in which a wrong move by a judge means immunity for the prisoner."). Further, it is at odds with the overall purpose of the probation statutes, which aim to rehabilitate defendants while providing protection to the public. Here, invalidating the probation violation based on the court's failure to provide defendant a certificate harms foremost the victim of defendant's crime. Such a result should not be reached lightly, especially where the language of the statute does not particularly provide for this consequence. I respectfully dissent.

¶ 44. I am authorized to state that Justice Burgess joins this dissent.