*In re Ritchey*, No. 659-7-15 Cncv (Mello, J., Nov. 17, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| IN RE ROBERT RITCHEY | Docket No. 659-7-15 Cncv |

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a post-conviction relief proceeding under 13 V.S.A. §7131. In his Amended Petition for Post-Conviction Relief, Petitioner Robert Ritchey asks the court to vacate and set aside criminal convictions and sentences that were imposed pursuant to plea agreements that he entered into with the State on the grounds that he did not get the benefit that he bargained for, his pleas were not voluntary, and he received ineffective assistance of counsel at sentencing. The State opposes the petition, and both parties have filed motions for summary judgment. The following facts are undisputed.

UNDISPUTED MATERIAL FACTS

In the spring of 2014, the Petitioner faced criminal charges in Chittenden County and Addison County. With the assistance of counsel, Petitioner reached a global settlement of all the charges pending in both counties. Under the terms of the settlement, there would be one sentencing hearing to be held in Chittenden County at which Petitioner would be sentenced on the charges that he pled guilty to in both counties.

On May 13, 2014, Petitioner and his attorney signed a plea agreement relating to the Chittenden County charges.[1] Under the terms of the agreement, Petitioner agreed to plead guilty to three of the criminal charges pending in Chittenden County, and he agreed to the revocation of his probation, in return for dismissal of three other Chittenden County charges and an agreement by the State that any sentence imposed under the agreement would be "capped at total sentence of 2-5 years, with credit per law, concurrent with Addison County cases, as part of a global resolution of cases in the two counties" (Petitioner's Exhibit A). The form that Petitioner signed said "[t]his is a biding Rule 11 Agreement" (Id.).

---

[1] Neither party has provided the court with a copy of the plea agreement relating to the Addison County charges, but the charges that Petitioner pled guilty to in that county are identified elsewhere in the record (see Exhibit D).

Because one of the Chittenden County charges (unlawful restraint of females under the age of 18 in violation of 13 V.S.A. § 2406(a)(1)) and one of the Addison County charges (attempting to entice a child under the age of 16 to engage in a sexual act in violation of 13 V.S.A. §2828) to which Petitioner plead guilty were felony offenses, a pre-sentence investigation ("PSI") report was ordered. The requested PSI report was completed by the Department of Corrections, and it was provided to the parties and made available to the court at the sentencing hearing. The PSI report contained he following information:

> If incarcerated, Mr. Ritchey will be referred to the Department of Corrections Level B moderate-intensity incarcerated treatment program at Southeast State Correctional Facility (SECF). A sentence of fourteen (14) months or more after applying credit for time served prior to sentencing is required for eligibility. The length of the program is typically twelve (12) months, but may be as long as eighteen (18) months in duration. Treatment will not begin until Mr. Ritchey is within twelve to eighteen (12-18) months of his minimum release date. When Mr. Ritchey completes treatment, he will be eligible for community release and his treatment will continue in the DOC community-based treatment program.

> Based upon the risk assessment scores and history, Mr. Ritchey would likely be referred to the DOC High Risk Designation Committee for review. If he is sentenced to straight time to serve and is designated high risk, Mr. Ritchey would be required to serve 70% of his sentence before he would be eligible for release.

(Exhibit D, pp. 12-13) (emphasis added).

Petitioner's sentencing hearing was held in Chittenden County on September 9, 2014. Petitioner was present with his defense attorney. The State argued for a sentence to serve of 22 months (the 14-month minimum required for the programming referred to in the PSI plus the almost 8 months of credit for time served that Petitioner was entitled to under the plea agreement) to 3 years (Exhibit C, pp. 3-4 and 6). Petitioner's attorney argued for a sentence of 2-5 years, split with 7 months to serve (the seven months he had already served) and the remainder of the sentence to be served on probation (Id., pp. 4-6). After listening to the arguments and to Petitioner's allocution, the sentencing judge imposed a sentence of 2-5 years to serve. In imposing the sentence, the judge said:

> As I look at the number of charges here in the two counties, … particularly the quite concerning summary set out by the Department of Corrections … on the offenses and the violation of conditions, I do believe that an incarcerative rehabilitative sentence is appropriate, and that it should not be a community-based treatment. I also think that there should be an extensive period of supervision by Corrections.

> … So I will impose a minimum sentence of 24 months to serve.

> The State's requesting three years as a maximum. I do expect Mr. Ritchey to be released prior to the course maximum, but I think there should be significant Corrections supervision, more extensive than would be allowed by probation given

2

these violation of conditions. So I will impose an overall sentence of two to five years to serve, with a recommendation that he complete the in-house sex offender program.

(Exhibit C, pp. 6-7). Defense counsel then asked the judge to consider a sentence of "two to five, split to serve two," but the judge declined the request, saying:

[G]iven the violation of conditions, what I look at as pervasive conduct, I think Corrections needs to have furlough supervision rather than probation supervision. So – and I don't expect him to serve that amount of time. He can work out of that – out of that sentence, but I want him under a furlough rather than a probation supervision.

(Id., p. 8).

At no point during the sentencing hearing did the prosecutor, defense attorney or judge make any mention on the record of the fact, noted in the PSI report, that, in light of Petitioner's risk assessment scores and criminal history, Petitioner "would likely be referred to the DOC High Risk Designation Committee for review" and "[i]f he is sentenced to straight time to serve and is designated high risk" he "would be required to serve 70% of his sentence before he would be eligible for release."

At the time Petitioner was sentenced, Title 28 of the Vermont Statutes Annotated contained the following provision:

A person who is sentenced to an incarcerative sentence for a violation of any of the offenses listed in subsection 204a(a) of this title and who is designated by the Department of Corrections as high-risk pursuant to 13 V.S.A. § 5411b while serving his or her sentence shall not be eligible for parole, furlough, or any other type of early release until the expiration of 70 percent of his or her maximum sentence.

28 V.S.A. § 204b. One of the charges that the Petitioner had pled guilty to (i.e., the Addison County charge of enticing a child under the age of 16 to engage in a sexual act) was an offense listed in subsection 204a(a) of Title 28.

On June 15, 2015, the Department of Corrections ("DOC") sent Petitioner a letter notifying him that he had been designated a high risk sex offender and, because he had at least one conviction for a crime identified in 28 V.S.A. § 204a(a), his earliest release date would be November 16, 2017 (Exhibit E). This had the effect of increasing Petitioner's minimum sentence from 2 years to 3½ years.

Petitioner was unaware, both at the time he entered into the plea agreements and at the time of the sentencing hearing, that, if he received an incarcerative sentence and was later determined by DOC to be a high risk sex offender, he would have to serve at least 70% of his maximum sentence before being eligible for release.

3

DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and any party is entitled to judgment as a matter of law. V.R.C.P. 56(a). The nonmoving party is entitled to "the benefit of all reasonable doubts and inferences." Campbell v. Stafford, 2011 VT 11, ¶ 10, 189 Vt. 567 (quotation omitted).

Petitioner contends that his convictions and sentence must be vacated because in his plea agreements he bargained for a sentence not greater than 2-5 years to serve but ended up with a sentence of 3½ - 5 years to serve. In the alternative, Petitioner argues that his convictions and sentence must be vacated because he entered into his pleas agreements based on a material misunderstanding as to his parole eligibility, which went uncorrected by his defense attorney. The State denies Petitioner's claims and contends that the sentence that he received (i.e., 2-5 years to serve with credit for time served) was expressly authorized by the plea agreements.

Because defendants surrender significant rights upon entering a guilty plea, prosecutors are strictly bound by the terms of their plea agreements. State v. Byrne, 149 Vt. 224, 225 (1988); State v. Earle, 145 Vt. 650, 653 (1985). For this reason, ambiguities in a plea agreement are construed against the State. Earle, 145 Vt. 652, n.2 ("[I]n drafting a plea agreement the State has every opportunity to make the terms clear and explicit. An agreement should be so unambiguous … as to preclude any challenge by the defendant," quoting In re Meunier, 145 Vt. 414 (1985)). Defendants who are induced to enter into plea agreements based upon their express provisions, are entitled to rely on those provisions and may demand specific performance of them. State v. Duval, 156 Vt. 122, 125 (1991) ("Generally, breach of a plea agreement is treated like breach of a contract, and a defendant may demand specific performance of the terms of the agreement."); State v. Parker, 155 Vt. 650, 651 (1990) (mem.) ("We recognize that plea agreements are contractual in nature, and that the parties are entitled to rely upon the provisions of the plea bargain."); State v. Day, 147 Vt. 93, 95 (1986) ("Certainly, a defendant who changes his plea form not guilty to either guilty or nolo contendere after striking a plea bargain has the right to demand that the State fulfill its end of the bargain."). Lastly, although plea agreements are not binding on the court, "[i]f the court accepts a plea agreement, it is bound to adopt a disposition 'provided for in the plea agreement or a less onerous disposition.'" State v. Hemingway, 2014 VT 48, ¶ 22, 196 Vt. 441 (quoting V.R.Cr.P. 11(e)(3)).

Here, Petitioner entered into plea agreements in which he pled guilty to serious criminal charges in return for the assurance that his sentence would not exceed 2-5 years to serve, with credit for time served as allowed by law. The sentencing judge imposed a sentence of 2-5 years to serve, with credit for time served, as authorized by the plea agreement. Eight months later, however, Petitioner's minimum sentence was increased from 2 years to 3½ years, by virtue of the DOC's decision to invoke the "70% rule" set forth in 28 V.S.A. § 204b, upon designating Petitioner as a high risk sex offender. This was not the outcome that Petitioner bargained for when he entered into his plea agreements with the State.

If this outcome had come about because of some post-sentencing act or omission committed by the Petitioner, the court would agree with the State that Petitioner would have no basis for alleging a breach of his plea agreements. For example, if the Petitioner had failed to

4

satisfactorily complete his incarcerative sex offender treatment programing, he could not rely on his plea agreements to prevent the DOC from refusing to release him upon reaching the end of his 2-year minimum sentence. But that is not what happened here. DOC's decision to invoke the 70% rule and was based solely on its decision to designate Petitioner as a high risk sex offender. By unilaterally increasing Petitioner's minimum sentence from 2 years to 3½ years, the State violated an express provision of his plea agreements capping his minimum sentence to 2 years. See State v. Careau, 2016 VT 18, ¶ 11 ("Parties to a plea agreement are entitled to rely upon the express terms of the agreement.") (quotation omitted).

The State argues that DOC's invocation of the 70% rule cannot be viewed as having had the effect of increasing the 2-5 year sentence that Petitioner received from the sentencing court. In support of this contention the State relies on the recent decision of the Vermont Supreme Court in State v. Goewey, 2015 VT 142, wherein the Court stated that "the 70% rule does not increase a sentence imposed by the judicial branch" and that it "is not an enhancement of a potential sentence to a different and harsher one…." Id., ¶ 30. The State reads too much into the Goewey decision.

In Goewey the defendant plead guilty to one count of aggravated sexual assault for repeatedly performing oral sex on a young man. The parties' plea agreement called for a contested sentencing hearing, at which the State would be free to argue for a sentence to serve of up to forty years to life and defendant could argue for a sentence of ten years to life, split to serve five years. The probation officer testified at the sentencing hearing regarding the potential impact of 28 V.S.A. § 204b and its "70% rule" on any sentence that might be imposed. The court imposed a sentence to serve of 20 years to life, and the defendant appealed the sentence. On appeal, the defendant argued, among other things, that the 70% rule was unconstitutional because it violated the separation of powers and allowed DOC to enhance a sentence on facts not found by a jury in violation of State v. Provost, 2005 VT 134, 179 Vt. 337. Goewey, ¶¶ 1-11.

The Vermont Supreme Court held that the 70% rule did not apply to the defendant in Goewey because he had received a maximum life sentence and "calculating 70% of life is not possible." Id., ¶ 34. Thus, the Court's discussion in Goewey of the defendant's constitutional challenges to the 70% rule appear to be dicta. Moreover, although the Court in Goewey did come to the conclusion that the 70% rule was constitutional, the Court did not hold that DOC could lawfully apply that rule in a manner that violates an express provision of a plea agreement. That issue was simply not before the Court in Goewey.

Clearly, DOC's invocation of the 70% rule in this case had the effect of increasing Petitioner's minimum sentence. If DOC had not invoked the 70% rule, Petitioner would have been eligible for release upon reaching the end of his 2-year minimum. See 28 V.S.A. § 501(s) ("An inmate who is serving a sentence of imprisonment shall be eligible for parole consideration as follows: … [i]f the inmate's sentence has a minimum term, the inmate shall be eligible for parole consideration after the inmate has served the minimum term of the sentence."). Because of DOC's invocation of the 70% rule, however, 28 V.S.A. § 204b disqualifies the Petitioner from any consideration "for parole, furlough, or any other type of early release" until he has served 3½ years. While for constitutional purposes DOC's action here did not "constitute a usurpation of judicial power" or "an enhancement of a sentence any more than would be a denial of parole once the minimum sentence has been reached," Goewey ¶¶ 27 and 30, DOC's action unquestionably

5

increased the minimum amount of time Petitioner will have to spend in jail from 2 years to 3½ years, in contravention of his plea agreements. In the absence of relief from this court, Petitioner will end up with a minimum sentence that is six months longer than the 3-year *maximum* sentence that the State argued for at the sentencing hearing.

There is a second, alternative basis for overturning Petitioner's convictions and sentence in this case. A prisoner who is in custody under sentence of a court may obtain post-conviction relief upon a showing, by a preponderance of the evidence, "that he entered his plea while reasonably relying on a material misunderstanding regarding his parole eligibility, and that such misunderstanding worked to his prejudice." In re Moulton, 158 Vt. 580, 584 (1992) ("[M]isinformation regarding his parole eligibility may provide a basis for a successful attack on the voluntariness of a plea."). At the time Petitioner entered into his plea agreements and attended his sentencing hearing, it was his understanding that, if he received an incarcerative sentence, he would be eligible for parole consideration after not more than two years. That understanding was material to his decision to enter into the plea agreements, but the understanding was incorrect. In fact, by pleading guilty to the Addison County charge of enticing a child under the age of 16 to engage in a sexual act, an offense listed in 28 V.S.A. § 204a(a), Petitioner became subject to the 70% rule. DOC disclosed that fact in its PSI report, but no one disclosed it to the Petitioner. This undermines the voluntariness of his guilty pleas.

Petitioner's third claim for relief, his claim of ineffective assistance of counsel, fails for failure to provide the court with the testimony of an expert that his defense attorney's representation fell short of professional standards. In re Grega, 2003 VT 77, paragraph 16, 175 Vt. 631 (mem.) ("Only in rare situations will ineffective assistance of counsel be presumed without expert testimony."). Therefore, the court will not consider that claim further.

Having found that the State has violated an express provision of Petitioner's plea agreements and that Petitioner's pleas were involuntary, the court must determine whether to enforce the plea agreements or allow Petitioner to withdraw his plea. State v. Coleman, 160 Vt. 638, 640 (1993) (mem.) ("[W]here the prosecution violates a plea agreement, state courts have the discretion of deciding whether to enforce the plea agreement or to allow the defendant to withdraw his plea."). Petitioner does not ask the court to enforce the plea agreement, and enforcement does not appear to be possible in any event; the court cannot countermand DOC's decision to designate Petitioner as a high risk sex offender, and the Vermont Supreme Court has concluded that the 70% rule is constitutional. Petitioner asks the court instead to vacate his convictions and his sentence and allowing him to withdraw his pleas.

The court agrees that this is would be an appropriate resolution here because this is what would have happened if the sentencing judge had informed Petitioner at the time of sentencing that he was rejecting the 2-5 year cap in the plea agreement and imposing instead a sentence of 3½-5 years to serve. Under that circumstance, the judge would have been required to give Petitioner an opportunity to withdraw his guilty pleas. See V.R.Cr.P. 11(e)(4) ("If the court rejects the plea agreement … the court shall … afford a defendant who has already pleaded the opportunity to then withdraw his plea…."). Petitioner is entitled to that opportunity now.

Lastly, in its cross-motion for summary judgment, filed on July 12, 2016, the State suggests that this court cannot consider Petitioner's challenge to his Addison County plea agreement because the Addison County State's Attorney was not notified of the Petitioner's post-conviction relief petition in this case. Petitioner objects to the State's suggestion and argues that this court has jurisdiction to consider his challenges to both of his plea agreements.

By statute "the superior court of the county where the sentence was imposed" is the proper forum to hear and consider a petition for post-conviction relief. 13 V.S.A. 7131. The sentence in this case was imposed in Chittenden County, so this court is the proper forum to adjudicate this petition. Upon the filing of a petition for post-conviction relief, this court was required to "cause notice thereof to be served upon the state's attorney and attorney general, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 13 V.S.A. 7133. In requiring that notice be sent to "the state's attorney," the statute does not expressly specify which county prosecutor is entitled to the notice, but the clear implication is that it is the state's attorney of the county where the sentence was imposed. Here, the notice went to the Chittenden County State's Attorney and the Attorney General. Therefore, the court complied with its statutory notice requirements.

Sending notice to the Chittenden County State's Attorney and the Attorney General not only complied with the statute but also made perfect sense in this case. Petitioner and the state's attorneys for the two counties entered into a global resolution of all charges in both counties, and under that resolution the Addison County State's Attorney agreed that the sentencing hearing would be held in Chittenden County. The State has offered no explanation of why the Addison County State's Attorney would need to participate in a post-conviction relief proceeding challenging a sentence imposed in Chittenden County.

In addition, if the State truly believed that the Addison County State's Attorney was a necessary party to this proceeding, the State could and should have raised the issue at the outset of this case. By waiting a year before raising the issue, the State has waived the right to complain about lack of notice to the Addison County State's Attorney.

ORDER

For all the foregoing reasons, Petitioner's motion for summary judgment is GRANTED, Respondent's cross-motion for summary judgment is DENIED, Petitioner's convictions and sentence are vacated, and Petitioner is granted leave to withdraw his guilty pleas.

SO ORDERED this 17th day of November, 2016.

_____
Robert A. Mello
Superior Court Judge

7