NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 22

No. 22-AP-285

In re G.C., Juvenile

Supreme Court

On Appeal from
Superior Court, Windsor Unit,
Family Division

March Term, 2023

Heather J. Gray, J.

Katina Francis of Katina Francis Ready, PLLC, Bristol, for Appellant.

Travis W. Weaver, Windsor County Deputy State's Attorney, White River Junction, for Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **EATON, J.**   Youth G.C. brings this interlocutory appeal from a family division order denying his request for youthful-offender status. On appeal, youth argues that the evidence does not support the court's finding that there was insufficient time to meet youth's treatment and rehabilitation needs. We affirm.

¶ 2.     The State charged youth with felony sexual assault in October 2021. In December 2021, youth moved to transfer the matter to the family division and for treatment as a youthful offender. Following a hearing over two days in April and May 2022, the family division issued a written order in May 2022, making the following findings. Youth was nineteen at the time of the hearing. He had no prior legal charges or adjudications/convictions. He had been on a school

safety plan because, at nine years old, he reportedly threatened to harm and kill school staff and, at twelve years old, he drew images of guns and people being shot. Youth met with a school clinician and briefly engaged in individual counseling. In October 2018, youth received a one-day suspension for "sexually explicit drawing/inappropriate behavior." Later that year, youth withdrew from school and eventually obtained a GED through homeschooling.

¶ 3. Youth obtained employment and worked at various jobs. At the time of the alleged incident, youth was employed. Youth was using cannabis regularly, drank alcohol heavily on weekends, and experimented with other substances.

¶ 4. The charge against youth was based on the following allegations. The victim, H.G., was seventeen at the time of the alleged sexual assault. She reported that she was acquainted with youth and one evening he came to where she was living. Youth was drunk and offered H.G. alcohol. She consumed alcohol and blacked out. She alleged that when she woke up youth was on top of her, holding her down, and performing oral sex. She said no multiple times and told him to stop. After the assault, she was covered in bruises. She expressed that she was emotionally harmed by youth's actions and did not support youth's request to be treated as a youthful offender.

¶ 5. Dr. Holt completed a psychosexual evaluation of youth in February 2022, and testified at the hearing. Dr. Holt assessed youth as needing various levels of treatment for frequency of sexual thoughts, sexual-behavior management, use of unstructured time, social skills, and substance use. Dr. Holt concluded that youth was not a significant risk because he had more protective factors than risk factors, but acknowledged that there was no empirical tool to determine the risk for young offenders. Dr. Holt recommended that youth engage in a program called Good Lives Model for treatment to address sexual preoccupation, sexual behavior management, and substance use. The Department for Children and Families (DCF) did not make a recommendation regarding youthful-offender status. Although youth expressed interest in offense-related treatment, he had not made any effort to begin the treatment process.

2

¶ 6.     A probation officer for the Department of Corrections (DOC) testified concerning the available programming for youth. The probation officer stated that if youth was adjudicated as a youthful offender, he would be referred by the DOC for the Good Lives Model and if he was not accepted, the DOC would assist him in finding a private counselor. The probation officer estimated that the treatment would take at least a year, but the total length would not be known until youth was assessed by the program or a private counselor.

¶ 7.     The family division found that public safety could be protected by treating youth as a youthful offender and that youth was amenable to treatment. The family division found, however, that despite Dr. Holt's belief that youth could complete treatment before his twenty-second birthday, youth had not met his burden of demonstrating that there was sufficient time to meet youth's treatment and rehabilitation needs. The family division emphasized that there still had not been a merits adjudication and an assessment of youth's treatment needs, and youth had not yet engaged in any treatment. Given the uncertainty in the length and timing of treatment, the court found that there were insufficient services and denied the request for youthful-offender status. Youth moved for permission to bring a collateral final order appeal under Vermont Rule of Appellate Procedure 5.1. The court granted that request.

¶ 8.     The process for requesting youthful-offender status is controlled by statute, which allows a defendant under twenty-two to move to be treated as a youthful offender. 33 V.S.A. § 5281(a). The defendant, as proponent of the motion for youthful-offender status, has the burden of proof. Id. § 5283. In determining whether to grant youthful-offender status, the family division must first consider whether public safety will be protected by treating the youth as a youthful offender. Id. § 5284(a)(1). The statute provides a list of factors for the court to consider in assessing whether public safety will be protected. Id. § 5284(a)(2). If the court finds that public safety will not be protected, the court "shall deny the motion." Id. § 5284(a)(1). If public safety will be protected, the court moves on to consider the additional statutory requirements concerning

3

treatment. If the court finds that the youth "is not amenable to treatment or rehabilitation," or that "there are insufficient services in the juvenile court system" or through DCF or DOC to meet the youth's needs, the court "shall deny the motion." Id. § 5284(b).[1]

¶ 9. Here, the court found that public safety would be protected, and that youth was amenable to treatment, but determined that there were insufficient services. On appeal, youth challenges the court's determination that he was not eligible for youthful-offender status because there were insufficient services to meet his needs. Before addressing the merits of this argument, we clarify the standard that is applicable in this case as we have not yet had a youthful-offender appeal in this posture. In State v. J.S., 2018 VT 49, 207 Vt. 379, 189 A.3d 552, the youth appealed a decision revoking his youthful-offender status. The relevant statute provided that the court "may" revoke youthful-offender status if the court found that the youth had violated probation conditions. See 33 V.S.A. § 5285(c) (providing options for court when youth violates probation).[2] In accordance with the statutory language of "may," this Court held that the trial court had discretion in deciding whether to revoke and thus that the revocation decision was reviewed under an abuse-of-discretion standard.

¶ 10. In In re B.B., 2019 VT 86, ¶ 4, 211 Vt. 272, 224 A.3d 1149, the youth appealed the trial court's denial of youthful-offender status on the basis that the youth had not met his burden of demonstrating that public safety would be protected if he were granted youthful-offender status. The decision stated that the family division's decision to deny youthful-offender status was reviewed for an abuse of discretion, and cited State v. J.S. without further explanation. Because

---

[1] The statute also provides the reverse—if the court finds that the youth is amenable to treatment and there are sufficient services, the court "shall grant the motion." 33 V.S.A. § 5284(b)(2) (emphasis added).

[2] Although the statute has been amended since State v. J.S., the amendments did not alter this portion of the statutory language.

In re B.B. concerned the trial court's consideration of the factors in § 5284(a)(2) regarding public safety, an abuse-of-discretion standard was appropriate.

¶ 11.    Here, unlike In re B.B., the basis for the denial was that youth had not demonstrated that there were sufficient services under § 5824(b).  In contrast to the court's discretion to revoke probation or weigh multiple public-safety factors, the pertinent language regarding whether to grant youthful-offender status once a finding of insufficient services is made is mandatory.  The statute provides that the court "shall deny the motion if the court" makes the requisite findings.  33 V.S.A. § 5284(b)(1) (emphasis added).  The plain meaning of the word "shall" indicates that if the predicate finding regarding a lack of services is made, the family division must deny the motion for treatment as a youthful offender.  See State v. Hemingway, 2014 VT 48, ¶ 11, 196 Vt. 441, 97 A.3d 465 ("Generally, the imperative 'shall' indicates that the provision is mandatory."). Therefore, the family division does not have discretion to grant youthful-offender status if the requisite finding pertaining to lack of services is made.

¶ 12.    Of course, the trial court as factfinder retains the discretion "to determine the credibility of the witnesses and to weigh the evidence."  In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993).  On appeal, the trial court's individual findings will be affirmed if they are supported by credible evidence in the record and the court's conclusions of law will be upheld if supported by the findings.  See id. (explaining that "our role is limited to determining whether [the findings] are supported by credible evidence"); State v. J.S., 2018 VT 49, ¶ 5.  As applied to cases like this, given the statutory wording, the question is whether the evidence supports the court's individual factual findings and whether those findings in turn support the requisite statutory determinations regarding the youth's capacity for treatment and the availability of sufficient services.

¶ 13.    Therefore, we turn to the arguments in this case.  Youth argues that the family division erred in finding that there were insufficient services to meet youth's treatment and

5

rehabilitation needs because there was inadequate time for youth to complete programming. Youth will be twenty-two in October 2024, and he was nineteen-and-a-half at the time of the hearing in June 2022.

¶ 14. The focus in this appeal is on the family division's determination that there were insufficient services "to meet the youth's treatment and rehabilitation needs," id., because youth had not demonstrated that there was enough time to complete programming before turning twenty-two. As a matter of law, youth concedes, and we agree, that a youth's age and the time available for programming are permissible considerations for a court to evaluate in determining whether there are sufficient services. Youth asserts, however, that in this case the evidence does not support the court's finding that there was insufficient time to provide youth with the treatment and rehabilitation that he required.

¶ 15. Youth claims that the evidence shows that there was enough time to complete services. Youth relies primarily on the testimony of Dr. Holt that, in his opinion, there was treatment available in the community and youth could complete the treatment in two years, which would have been before youth's twenty-second birthday. Youth also points to the DOC probation officer's testimony that youth would be referred for treatment through the Good Lives Model or, if not accepted to that program, to a private counselor, and that the program would likely take at least a year to complete. Although these statements could have supported the finding youth advances, the family division was not required to credit the assertions. Importantly, these statements were counterbalanced by other testimony. Although Dr. Holt opined that it was possible for youth to complete counseling within two years, Dr. Holt's opinion was based on general terms and was not specific to youth. The opinion hinged on youth being accepted for the Good Lives Model program, which would not be known until youth completed an assessment with the provider. Similarly, the DOC probation officer indicated that programming could take a year

6

or more, depending on the risk assessment, and that there was no guarantee that youth would be accepted into the program or the amount of time that would be required to complete the program.

¶ 16.    Moreover, the time frames provided by Dr. Holt and the probation officer did not include the delays before youth's treatment would actually begin.  The case remained in the beginning stages procedurally and still needed a merits hearing and a disposition order.  See 33 V.S.A. § 5281(d) (providing that if family division grants youthful-offender status, case proceeds "to a confidential merits hearing or admission").  As of the hearing, youth had not engaged in any programming voluntarily.

¶ 17.    It was up to the family division as trier of fact to determine the weight and credibility of the evidence.  See State v. Parker, 139 Vt. 179, 182, 423 A.2d 851, 852 (1980) (explaining that trial court is solely responsible for weighing evidence, assessing credibility of witnesses, and determining persuasive effect of testimony).  The record supports the court's findings that the availability, length, and timing of treatment were uncertain.  These findings in turn support the family division's determination that youth had not met his burden of demonstrating that there was sufficient time for programming and therefore that there were insufficient services.  Therefore, we affirm.

Affirmed.

FOR THE COURT:

_____
Associate Justice

7