## State of Vermont v. Myron Gleason

[576 A.2d 1246]

No. 87-384

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed April 20, 1990

*Robert M. Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, and *Robert Appel*, Public Defender, St. Johnsbury, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from the order of the district court revoking his probation and imposing an underlying sentence following his conviction for the misdemeanor offense of lewdness. 13 V.S.A. § 2632(a)(8). We affirm.

The trial court accepted defendant's plea of nolo contendere, issued a suspended sentence of one to three months, and placed defendant on probation. In addition to the standard conditions, the court imposed the special condition, No. 21, that defendant "continue with family counseling at Northeast Kingdom Mental Health." Approximately seven months after the imposition of conditions, defendant's probation officer filed a complaint alleging that defendant had violated two of the standard conditions[1] and the special condition of his probation. At the probation violation hearing, the probation officer testified that, due in part to defendant's 1973 felony sexual offense conviction, she referred defendant to a sexual offender's treatment program. The probation officer stated that defendant had refused to discuss any sex-related issues or the sexual offense convictions that had brought him before the court.

Roger Putnam, a licensed psychologist with Northeast Kingdom Mental Health (NEKMH), had been counseling defendant for over two years. Mr. Putnam testified that defendant de-

---

[1] The standard conditions were: (7) You shall permit a probation officer to visit your home or elsewhere; (8) You shall participate fully in any program to which you may be referred by the court or your probation officer.

clined to discuss his sexuality or the history of that sexuality. The psychologist stated that defendant had "not addressed the issue in any way with me in a meaningful way and this pattern of massive denial concerns me for his safe[ty] and for the community." In conclusion, Mr. Putnam opined that defendant presented a high risk of repeating some kind of sexually deviant behavior if he did not receive treatment for his "sexual confusion."

The court found that defendant had violated conditions 8 and 21. To allow defendant to continue probation, the court modified condition 21 (21(a)) to require defendant to "discuss issues surrounding sexual behavior and sexual offenses with Roger Putnam at NEKMH twice per month." The modification of condition 21 followed defendant's expression that he wished to continue counseling with Mr. Putnam and was willing to discuss all the issues surrounding the offenses for which he had been convicted. Defendant then signed the modified probation order indicating that he understood it and would abide by the modified conditions.

Approximately five months later, defendant's probation officer filed a second probation violation complaint alleging that defendant had violated conditions 8 and 21(a). At the violation hearing on this complaint, the psychologist testified once again. Mr. Putnam explained that defendant faithfully met his appointments and was pleasant. However, "when the agenda focused on any sexual matters or issues, there was a definite change in attitude and cooperation in terms of discussing that particular issue." While defendant elaborated to some extent on his childhood history, his sexual knowledge, and his adolescent sexual experiences, he adamantly refused to engage in any meaningful dialogue regarding his sexual offense convictions. Defendant also "readily dismissed" Mr. Putnam's suggestion that he engage in group therapy or group therapeutic work. Mr. Putnam concluded that because of this "wall of denial," defendant had failed to achieve any insight or self-understanding regarding his sexual behavior and the two offenses in particular. The psychologist testified that, as a result, he discontinued defendant's therapy sessions in the belief that additional counsel-

ing would not prove helpful. Defendant's probation officer also testified that defendant declined to discuss his sexual conduct or treatment issues.

The court concluded that defendant had steadfastly refused to discuss the issues surrounding his two sexual offense convictions and had therefore violated 21(a), the modified condition of probation. The court revoked defendant's probation and this appeal followed.

## I.

Defendant argues that special condition 21(a) is invalid on its face and therefore could not serve as a basis for the trial court's revocation of defendant's probation. Specifically, defendant contends that the modified condition violated his constitutional right against self-incrimination because it compelled him to discuss issues surrounding the two sexual offenses or face probation revocation and, consequently, incarceration. Any admissions to the therapist could subsequently be revealed to the probation officer. Therefore, defendant maintains that statements of the kind required could only be ordered with a grant of immunity because: (1) any information disclosed would be available to the State for use against him in any future revocation proceeding; and (2) the modified condition required him to confess to the instant offense, to which he never admitted by virtue of his nolo contendere plea, and to any unknown and uncharged acts of sexual deviancy.

At the outset we note that defendant raised none of these objections before the trial court. The policy that requires parties to bring to the attention of the trial court errors capable of correction applies in the context of probation hearings.[2] See *State v. Cooper*, 304 N.C. 180, 183, 282 S.E.2d 436, 439 (1981) ("defendant cannot relitigate the legality of a condition of probation unless he raises the issue no later than the hearing at which probation is revoked"). Ordinarily, this Court will not consider arguments raised for the first time on appeal, even

---

[2] We leave open the question whether raising an issue at the revocation hearing will preserve the issue for appeal.

when the defendant asserts a violation of constitutional rights. *State v. Stanislaw*, 153 Vt. 517, 527–28, 573 A.2d 286, 292 (1990). Therefore, the trial court's decision will stand unless the revocation of defendant's probation for the violation of special condition 21(a) constitutes plain error.

██ The nolo contendere "plea is a formal declaration that the accused does not contest the charge" against him. *State v. Fisher*, 233 Kan. 29, 34, 661 P.2d 791, 796 (1983). Unlike a plea of guilty, a nolo contendere plea is not admissible in another action based on the same act. *Id.* "However, in the criminal proceeding then pending, the plea of *nolo contendere* is taken as a complete admission of guilt leading to a judgment of conviction." *United States v. Williams*, 642 F.2d 136, 139 (5th Cir. 1981). When the court accepts a plea of nolo contendere, it has the same effect in that case as a plea of guilty and "authorizes the court for the purposes of the case to treat defendant as though he were guilty." *State v. Peck*, 149 Vt. 617, 622, 547 A.2d 1329, 1332 (1988); *State v. Cox*, 147 Vt. 421, 423, 519 A.2d 1144, 1145 (1986); see 2 W. LaFave & J. Isreal, Criminal Procedure § 20.4, at 637 (1984 & Supp. 1989) [hereinafter LaFave & Isreal] (nolo plea has same effect as guilty plea in terms of its finality and as a waiver of claims unrelated to the plea). A conviction that results from a nolo plea stands on the same footing as a conviction produced by trial or guilty plea, unless a specific statute creates a difference. *Williams*, 642 F.2d at 139; see LaFave & Isreal § 20.4, at 637 (judgment entered on plea of nolo contendere is a conviction and is admissible as such in other proceedings where the fact of conviction has legal significance, e.g., to apply habitual offender penalty provisions, or to claim double jeopardy in a subsequent prosecution). Therefore, though he did not expressly admit his guilt, defendant waived his right to trial, the right to be confronted with witnesses against him, and his privilege against self-incrimination. V.R.Cr.P. 11(c)(4).

██ While defendant's nolo plea effected a waiver of his privilege against self-incrimination, the waiver "relates only to the determination of guilt or innocence of the crime for which the plea is entered." *Cox*, 147 Vt. at 423, 519 A.2d at 1145. While

awaiting sentencing, a defendant who has pled nolo contendere may invoke the privilege to prevent the possible enhancement of the sentence. *Id.* However, the imposition of sentence extinguishes the privilege against self-incrimination with respect to the crime of which the accused is convicted and, because of the protection against double jeopardy, defendant faces no threat of subsequent prosecution for the offense.

In *Minnesota v. Murphy*, 465 U.S. 420, 436 (1984), the United States Supreme Court confronted the claim that a condition that compelled a defendant to participate in a sexual offender treatment program and "to be truthful with the probation officer in all matters" violated the Fifth Amendment privilege against self-incrimination. The Supreme Court explained that, where questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding, "there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings" and that "nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation." *Id.* at 435–36 n.7.

■■ While the special condition does not contravene the Fifth and Fourteenth Amendments, defendant claims that 21(a) violates Chapter I, Article Ten of the Vermont Constitution. An advocate has the duty to diligently develop and plausibly maintain the state constitutional issues it raises on appeal. *State v. Ryea*, 153 Vt. 451, 454, 571 A.2d 674, 675 (1990). Defendant offers no explanation how or why Article Ten affords greater protection in this instance than the Fifth Amendment. On these facts we find no reason to conclude that Article Ten compels a result different from that reached in *Minnesota v. Murphy*.

Defendant retained no privilege against self-incrimination with respect to the lewdness conviction, and the court did not err by conditioning defendant's probation upon a discussion of the sexual issues surrounding that conviction. Therefore, special condition 21(a) is not void on its face. Defendant's refusal to respond to inquiries regarding the sexual issues surrounding his convictions represented a violation of an express condition

of probation. Therefore, the court could revoke defendant's probation based on his failure, in the opinion of the therapist, to discuss meaningfully the relationship of the convictions to his sexuality.

The special condition required that defendant discuss sexual issues in order to preserve, rather than terminate, his conditional freedom. However, even if the special condition had required the disclosure of information that could potentially lead to revocation, such as the violation of another probation condition, there would exist no valid claim of the privilege against self-incrimination.

We also reject defendant's contention that special condition 21(a) violated the privilege against self-incrimination because it required him to admit to uncharged acts of sexual deviancy. If the questions asked of a probationer call for answers that would incriminate him in a pending or later criminal prosecution, the State will have created the classic penalty situation if it asserts, either expressly or by implication, that an invocation of the privilege would result in probation revocation. *Murphy*, 465 U.S. at 435.[3]

■■■ Special condition 21(a), however, required defendant to discuss matters relevant only to his probationary status and his prospective rehabilitation. The special condition did not take the extra, impermissible step of compelling defendant to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.[4] See *id.* The only sexual offenses that 21(a) required defendant to explore were those for which he had been convicted. Aside from those convictions, special condition 21(a) directed defendant to discuss issues surrounding his sexual behavior in an effort to help defendant "understand the root of [his] problems and perhaps control [his]

---

[3] However, "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Murphy*, 465 U.S. at 435–36 n.7.

[4] "[T]he State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Murphy*, 465 U.S. at 438.

behavior." The special condition said nothing about defendant's freedom to decline to answer particular questions and contained no suggestion that his probation was conditional on the waiver of his privilege against self-incrimination with respect to further criminal prosecution. See *id.* at 437. There was no infringement of the privilege against self-incrimination, and the court did not err in imposing the special condition.

## II.

In a related argument, defendant claims the court impermissibly included in the special condition a requirement that defendant address his 1973 felony sexual offense conviction. The court placed defendant on probation for a misdemeanor conviction based upon a single lewd act. Defendant asserts that, because it refers to the 1973 conviction, 21(a) is unrelated to the instant conviction and its inclusion as a condition of probation denies him the due process of law guaranteed by Chapter I, Article 10 of the Vermont Constitution.

28 V.S.A. § 252(b)(13) authorizes the court to impose probation conditions that reasonably relate to the rehabilitation of the defendant. Courts possess great discretion in setting the conditions of probation. *State v. Peck*, 149 Vt. at 622–23, 547 A.2d at 1333. To prevail on appeal, an aggrieved party must establish an abuse of discretion. Compare *Mangiapane v. State*, 178 Ga. App. 836, 836, 344 S.E.2d 756, 757 (1986) (probation condition that defendant complete the written requirements for Boy Scout merit badges on subject of traffic safety, law, and citizenship was reasonably related to defendant's driving under influence of alcohol conviction), with *State v. Brown*, 284 S.C. 407, 411, 326 S.E.2d 410, 412 (1985) (per curiam) (court could not condition the probation of defendants convicted of first degree criminal sexual conduct upon their successful surgical castration).

The court ordered as a condition of probation counseling regarding a conviction involving a similar offense, even though the conviction was twelve years old at the time of the commission of the instant offense. Completion of counseling with a psychologist is reasonably related to the crime of lewd-

ness. Where the prior conviction also involved a crime of a sexual nature, the court could reasonably include it in the counseling program in an effort to enable defendant to understand his sexual misbehavior. See *In re Martinez*, 86 Cal. App. 3d 577, 581, 150 Cal. Rptr. 366, 369 (1978) (where on its face, the prohibition against defendant's future possession of dangerous weapons was not related to defendant's instant battery conviction, the individual's propensities "as manifested by the present offense and *past behavior*, may justify such a condition in order to deter future criminality") (emphasis in original). The probation officer and the psychologist testified, and the court agreed, that the public would be best protected if defendant could learn to control his sexual behavior. The court believed that analysis of a similar conviction might help defendant understand his sexuality and directed him to examine it with the help of the psychologist. The court did not abuse its discretion by requiring discussion of the sexual issues relevant to the 1973 conviction. See *Peck*, 149 Vt. at 622–23, 547 A.2d at 1333 (where defendant charged with lewd and lascivious conduct involving a child under the age of sixteen pled nolo contendere to simple assault, the court could condition probation on the completion of counseling in a sexual offender's group because the assault was of a sexual nature).

### III.

Defendant argues that the trial court unconstitutionally delegated its judicial authority by allowing the probation officer to modify the plain meaning of special condition 21(a) and thereby violated Chapter II, § 5 of the Vermont Constitution. Defendant did not raise this argument before the trial court, and we decline to consider it on appeal. *State v. Stanislaw*, 153 Vt. at 527–28, 573 A.2d at 292.

### IV.

Defendant claims that the trial court erred by ruling that the special condition afforded defendant fair notice of the probation requirements, the violation of which could result in revocation. We disagree.

■■ Due process requires that the defendant receive "fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." *Peck*, 149 Vt. at 619, 547 A.2d at 1331. An offender placed on probation must be given a certificate explicitly setting forth the conditions of release. 28 V.S.A. § 252(c). The instructions and directions given to a defendant by a probation officer or the court can also serve to provide fair notice. *Peck*, 149 Vt. at 619–20, 547 A.2d at 1331. The court's findings will stand if the record contains any credible evidence that fairly and reasonably tends to support them. *Id.* at 620, 547 A.2d at 1331.

■ The record contains ample support for the finding that defendant received notice sufficient to satisfy due process requirements. According to condition 8, defendant agreed to participate fully in any program to which the court or the probation officer referred him. The first probation violation hearing resulted in large measure from defendant's refusal to approach sexual issues in general, and the sexual ramifications of his misdemeanor conviction in particular. At the first violation hearing, the court asked defendant if he was willing to discuss "all of the issues surrounding [his] sexual behavior" in these particular offenses. Defendant acknowledged that he was so willing. As a result, the court modified the special condition and made it more explicit instead of revoking his probation. Under these circumstances, the court properly determined that defendant had fair notice that his failure to discuss the sexual issues surrounding the two convictions would qualify as a probation violation. See *State v. Foster*, 151 Vt. 442, 446, 561 A.2d 107, 109–10 (1989).

## V.

■■ Lastly, defendant argues that the trial court lacked sufficient evidence to find that defendant violated special condition 21(a). "A court may revoke probation only after the State has established an alleged violation by a preponderance of the evidence." *State v. Millard*, 149 Vt. 384, 385, 543 A.2d 700, 701 (1988). Examination of the record discloses sufficient evidence upon which the trial court could base its finding of a probation

violation. The psychologist testified he found it impossible to engage in any meaningful dialogue with defendant regarding the sexual offense convictions. While defendant made some progress discussing how he gained sexual knowledge and his adolescent sexual experiences, Mr. Putnam concluded that defendant had constructed a "wall of denial" around his sexual misbehavior and was incapable of insight into "his needs, his self identity, how he responded to stress, and how all that might relate to his sexuality." This evidence fairly and reasonably supports the court's finding that defendant had violated the special condition of his probation. Therefore, defendant has not demonstrated the clear error necessary to obtain a reversal on appeal. *Peck*, 149 Vt. at 620, 547 A.2d at 1331.

*Affirmed.*