2011 VT 138

In re HS-122

[38 A.3d 1163]

No. 11-128

¶ 1. December 22, 2011. This case concerns public access to income-adjusted property tax records. Appellee Joseph O'Dea seeks a copy of the Town of Manchester's state property tax adjustment report, which contains a list of the property tax adjustments of Town taxpayers based in most instances on their income. Because we conclude that this report consists of "return information" within the meaning of 32 V.S.A. § 3102, we hold that the information requested is confidential. Therefore, we reverse.

¶ 2. Vermont residents pay two property taxes — municipal property taxes and a state education property tax, which is collected through municipalities when they collect local property taxes. See 32 V.S.A. §§ 5401-5412. Residents may, however, be entitled to a property tax adjustment from the state, which is essentially a reduction in the resident's property tax liability. 32 V.S.A. §§ 6061-6069. Somewhat confusingly, the term "adjustment" in this context refers both to several individual reductions that are available and to the ultimate sum of these reductions. The first two types of adjustment affect the taxpayer's property tax liability and are based on a taxpayer's household income. For the first type, an adjustment is available where the taxpayer's state education property tax burden exceeds a certain percentage of the taxpayer's household income — the relevant percentage itself being a function of income. See *id.* § 6066(a)(1). The amount of this adjustment is determined by household income, the value of the property, and the state's education property tax rate. See

*id.* Although the statute does not include an explicit income ceiling for eligibility, in practice only households with income less than approximately $97,000 will qualify for this adjustment. For the second type, an adjustment is available to a taxpayer whose household income does not exceed $47,000 if the taxpayer's total (municipal and state) property tax liability after the first adjustment exceeds a certain percentage of household income — the relevant percentage again being a function of income. See *id.* § 6066(a)(3). The taxpayer's household income and total property tax liability after the first adjustment are used to calculate this adjustment. This second adjustment essentially provides low-income households with a rebate for local property taxes.

¶ 3. Finally, in addition to these two income-based adjustments, there is a third type of adjustment: a household may receive an adjustment in property taxes by electing to allocate any overpaid income taxes to property taxes. See *id.* § 6066a(b). Thus, income withholdings or tax refunds directed toward payment of property taxes also factor into the total adjustment amount. In fact, in order to encourage such allocation of tax refunds, the state offers a small additional adjustment as an incentive for choosing to allocate an income tax refund in this way. See *id.* § 6066(h). The sum of all these various adjustments forms a total adjustment that the state instructs municipalities to apply to property tax bills. See *id.* § 6066a. Basically, the total adjustment represents the amount of the normal property tax liability that a taxpayer is not required to pay to the municipality.

¶ 4. In order to administer this process, the Department of Taxes calculates the appropriate total adjustment for each claimant and transmits this information to the municipality in which the property is located. *Id.* § 6066a(a)-(b). The calculation is based on information in the annual income tax return or other returns sub-

mitted contemporaneously with the income tax return.[1] The information for each municipality is transferred in a HS-122 report. The report contains a list of all homesteads in the municipality that qualify for an adjustment as well as the amount of each total adjustment. The list documents how much less the municipality should bill in property taxes to each eligible homestead based on the various adjustments described above. The Town's property tax bill to each taxpayer shows the amount of total property taxes, the share of the total to be paid by the state, and the share to be paid by the taxpayer.

¶ 5. Appellee requested a copy of the HS-122 report for the Town of Manchester from the Town Treasurer. The Town denied appellee's request, asserting that the HS-122 report is exempt from disclosure under various provisions of 1 V.S.A. § 317(c). The Town does provide the total property tax bill of each taxpayer but redacts the information showing the amount paid by the state and the amount paid by the taxpayer. Appellee then appealed this denial to Bennington Superior Court, Civil Division. The court held a hearing on the merits on November 15, 2010, and subsequently issued an opinion declaring the report to be public information and ordering the Town to produce the report. The Town appeals from this decision. Insofar as this appeal involves construing the statutory scheme for confidentiality of tax records, our review is de novo. See *In re South Burlington-*

*Shelburne Highway Project*, 174 Vt. 604, 605, 817 A.2d 49, 51 (2002) (mem.) ("Statutory interpretation is a question of law; thus our review is nondeferential and plenary.").

¶ 6. The Town argued that the information was exempt from disclosure under two exemptions in the Public Records Act: (1) 1 V.S.A. § 317(c)(1), based on 32 V.S.A. § 3102(a); and (2) 1 V.S.A § 317(c)(6). The trial court — although recognizing that the Town invoked "four separate exemptions" — analyzed the claim only under the latter subsection, which it found was the Town's "principal argument." That subsection exempts "a tax return and related documents, correspondence and certain types of substantiating forms which include the same type of information as in the tax return itself filed with or maintained by the Vermont department of taxes or submitted by a person to any public agency in connection with agency business." 1 V.S.A. § 317(c)(6). The trial court ruled that the information was not covered by the exemption because it was "derivative information" as described in *Finberg v. Murnane*, 159 Vt. 431, 435, 623 A.2d 979, 982 (1992). We concluded in *Finberg* that derivative documents were covered by the exemption only to the extent necessary "to avoid disclosure of information taken from the return and related documents." *Id.* Thus, under § 317(c)(6) and *Finberg*, the court concluded that the confidentiality of the HS-122 report turned on whether it revealed income information taken from individual returns.[2] Based on evidence presented by the plaintiff and the Town, as well as an opinion from the

---

[1] The information is provided on the Property Tax Adjustment Claim (Form HS-145) and the Household Income Schedule (Form HI-144). The current forms are available at http://www.state.vt.us/tax/propertyadj.shtml. The HS-122 reports sought in this action, however, were from the prior three years. Note that the relevant income is that of all members of a household, not necessarily an individual taxpayer.

---

[2] The court stated that "[e]ach aspect of the Town's argument . . . is based on the premise that one can accurately calculate a household's income . . . using the property tax adjustments found in the HS-122 report."

Attorney General's Office and the report of a study committee of the Legislature, the court concluded that the total adjustment amount could not be used to calculate the income of the taxpayer's household in all cases due to the income-independent third type of adjustment as described above. Confidentiality was therefore not deemed necessary. Accordingly, the trial court concluded that the HS-122 report was not covered by the exemption in § 317(c)(6).

¶ 7. We do not reach the question of whether the HS-122 report is covered by § 317(c)(6) because we conclude that the report is confidential under the statute governing confidentiality of tax records, 32 V.S.A. § 3102. As we discussed in *Finberg*, the confidentiality provisions in the tax statute can be broader than the exemption for tax records in the Public Records Act. See 159 Vt. at 436, 623 A.2d at 982 ("We are also not persuaded that we should read the Access to Public Records Act exception as broadly as the specific exception for tax return information held by the Vermont Commissioner of Taxes."). We explained that the Public Records Act exemption may be viewed "as the minimum protection for tax records applicable to all taxing authorities and types of taxes" whereas the confidentiality provision in Title 32 may be viewed "as a broader confidentiality policy applicable only to the state tax information the Legislature has specified." *Id.* If the tax statute makes information confidential, then that information will also be confidential under the Public Records Act — not because of the (c)(6) exemption but because of the (c)(1) exemption for "records which by law are designated confidential or by a similar term." 1 V.S.A. § 317(c)(1); see also *Finberg*, 159 Vt. at 436, 623 A.2d at 982 ("This is a recognition that in specific instances the Legislature may choose to go beyond the general confidentiality policies contained in the public records exceptions.").

¶ 8. The HS-122 report falls squarely within the confidentiality requirements of the tax statute. Subsection (a) of the tax records statute states, "No present or former officer, employee or agent of the department of taxes shall disclose any return information to any person who is not an officer, employee or agent of the department of taxes . . . ." 32 V.S.A. § 3102(a). Subsection (b) defines " '[r]eturn information' " to include, among other items, "any other data, from any source, furnished to or prepared or collected by the department of taxes with respect to any person." *Id.* § 3102(b)(3). The total property tax adjustment figure is indisputably a datum prepared by the department of taxes with respect to a person. Thus, the HS-122 report, compiling these figures for persons in the Town of Manchester, comes within the ambit of return information as defined in 32 V.S.A. § 3102(b)(3). It is therefore subject to the confidentiality requirement of § 3102(a). It is confidential irrespective of whether one can derive the income of a taxpayer from the amount of the adjustment to the property tax liability. Because of the scope of the confidentiality provision of the tax statute, the distinction used in *Finberg* between tax return information and derivative records does not apply.

¶ 9. The confidentiality requirement clearly applies to the Town of Manchester through subsection (h), which states, "If any provision of Vermont law authorizes or requires the commissioner to divulge or make known in any manner any return or return information, the person or persons receiving such return or return information . . . shall be subject to the provisions of subsection (a) of this section as if such person were the agent of the commissioner." *Id.* § 3102(h). The tax adjustment statute requires the commissioner to transfer the HS-122 report to municipalities like the Town of Manchester. Thus, the Town employees, as the recipients of the return informa-

tion, are subject to the confidentiality requirements of § 3102(a). They are therefore prohibited by law from disclosing the requested information.[3]

¶ 10. We recognize that the exceptions to public access to governmental records must "be construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." *Caledonian-Record Publ'g Co. v. Walton*, 154 Vt. 15, 20, 573 A.2d 296, 299 (1990). Even under a rule of strict construction of exceptions, however, we conclude that the information in this case is not publicly accessible under the plain meaning of the applicable statute. The policy choice is for the Legislature, not this Court. In 32 V.S.A. § 3102, the Legislature has chosen a policy of broad confidentiality for income tax information, which we must implement.

*Reversed.*

---

[3] Like the trial court, we are puzzled by the position of the Commissioner of Taxes that the information is confidential where held by the tax department but not confidential where held by employees of a municipality. In view of § 3102(h), the information is either publicly accessible when sought from either source or confidential as to both.