NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 49

No. 2016-310

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Jasen Suhr | September Term, 2017 |

Karen R. Carroll, J. (violations of probation); Theresa S. DiMauro, J. (final judgment)

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Marshall Pahl, Appellate Defender, and Rasheta Butler, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund and Robinson, JJ., and Dooley, J. (Ret.), and Pineles, Supr. J. (Ret.), Specially Assigned

¶ 1.     **REIBER, C.J.**   Defendant appeals the trial court's decision that he violated the terms of his juvenile probation by failing to attend school, comply with his GPS-monitoring requirements, and participate in a Restorative Justice Panel. Defendant also appeals the trial court's decision to revoke his youthful-offender status based on these violations. We affirm in part and reverse and remand in part.

¶ 2.     In June 2012, defendant was charged with sexual assault, in violation of 13 V.S.A. § 3252(a)(1), based on allegations that he forced his girlfriend to have sexual intercourse with him without her consent. At that time, defendant was seventeen, and his girlfriend was sixteen. The criminal court transferred defendant to juvenile court in September 2013, but it reversed that decision the next month, returning defendant to criminal court. In December 2013, defendant

entered a conditional guilty plea, which was contingent on the family division's accepting defendant for participation in the youthful-offender treatment program, pursuant to 33 V.S.A. § 5281.  In February 2014, the family division accepted defendant as a youthful offender and entered the terms of his juvenile probation.  The court set a two-year juvenile probationary period, anticipating completion in February 2016.

¶ 3.     Between June 2014 and November 2014, defendant's probation officer filed six complaints for violations of probation.  By the second complaint, dated July 25, 2014, the probation officer recommended removal from the youthful-offender program, arguing that defendant was not "amenable to treatment as a youthful offender."  After three days of hearings, beginning in October 2014 and concluding in January 2015, the court found that defendant had violated the terms of his juvenile probation by (1) failing to attend school without excuse, (2) failing to comply with his GPS-monitoring requirements, and (3) failing to participate in a Restorative Justice Panel.  Based on these violations, the trial court revoked defendant's youthful-offender status and returned the case to criminal court for sentencing.  Defendant was sentenced to serve three years to life, all suspended except for two years, with credit for time served, and was placed on probation.  On appeal, defendant challenges each violation finding, the standard the court used to decide revocation, and the revocation decision.  We address each argument in turn.

I. Violations of Probation

¶ 4.     We first address defendant's arguments that the court erred in finding violations of probation.  The State has the burden to show that defendant violated the terms of his probation. 33 V.S.A. §§ 5268(b), 5285(b).  The State meets its burden if it can show by a preponderance of the evidence that there has been a violation of a probation condition that is "express" or "so clearly implied that a probationer, in fairness, can be said to have notice of it."  State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (quotation and alterations omitted).  If the State meets that burden, "the burden of persuasion shifts to the probationer to prove that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own."

2

Id. (quotation and alterations omitted). A defendant's conduct is willful if the "defendant intended to do the act that constituted the violation" and "the violation could not result from mistake, an accident, or a misunderstanding." Benson v. Muscari, 172 Vt. 1, 4, 769 A.2d 1291, 1295 (2001).

¶ 5.     Probation violations raise mixed questions of law and fact. State v. Provost, 2014 VT 86A, ¶ 12, 199 Vt. 568, 133 A.3d 826. The trial court makes a factual determination regarding what actions the defendant committed, and then the court makes a legal conclusion that the acts violated the terms of probation. State v. Blaise, 2012 VT 2, ¶ 12, 191 Vt. 564, 38 A.3d 1167 (mem.). On appeal, we will uphold findings of fact if they are "supported by credible evidence," and we will uphold legal conclusions "if supported by the findings." Id.; State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661. We conclude the record supports the trial court's findings with respect to defendant's school-attendance, GPS-monitoring, and Restorative Justice Panel participation violations.

A.  Failing to Attend School

¶ 6.     Defendant's juvenile probation certificate required that if he was "enrolled in school or a training program," he had to "attend daily and on time, unless excused." The State produced evidence that defendant had nine unexcused absences between June 2014 and October 2014, plus an additional unexcused absence in November 2014. This evidence supports the trial court's conclusion that defendant violated the terms of his probation by failing to attend school without excuse.

¶ 7.     Defendant challenges the court's findings, arguing that the evidence could not prove a violation because the testimony did not identify specific dates on which defendant was absent. However, the State did introduce specific evidence: two absences between April and June 2014; all five days scheduled for July 2014; two in September 2014; and one in November 2014. This evidence is not "vague" or "general," as defendant argues. Cf. State v. Johnson, 638 So. 2d 273, 275 (La. Ct. App. 1993) (finding state did not bear its burden of proof where only evidence of probation violation was "vague reference" to certified copy of out-of-state conviction).

3

Defendant also claims the court erred in finding the absences occurred between June 24, 2014, and October 6, 2014, whereas the evidence established absences between April 14, 2014, and September 30, 2014. We reject this argument as unreasonably technical. Cf. In re Twenty-Four Vt. Utils., 159 Vt. 363, 369, 618 A.2d 1309, 1312 (1992) (dismissing argument about administrative board's analysis as "overly technical"). The court found repeated unexcused absences before the first violation-of-probation hearing, and the evidence supports that finding.[1]

¶ 8.　Next, defendant argues that the trial court erred in finding his unexcused absences "willful," stating the absences resulted from housing and transportation difficulties. See Austin, 165 Vt. at 398, 685 A.2d at 1082 (requiring probationer to show violation was not willful). The evidence shows that in June 2014, defendant and his family were evicted from their apartment and moved to a motel. They shared one car, the closest bus stop was a few miles away, and defendant had difficulty arranging bus pick-ups. Defendant requested to spend a few nights each week at his sister's home, which was located very close to defendant's school, but the probation officer said this would require the Department for Children and Families to investigate defendant's contact with the young children living with defendant's sister.

¶ 9.　The evidence supports the trial court's conclusion that defendant's unexcused absences were intentional and not beyond his control. See State v. Anderson, 2016 VT 40, ¶ 13, 202 Vt. 1, 146 A.3d 876 (determining conduct willful if it is "the result of intentional conduct" and not "by accident, mistake, or inadvertence" (quotation omitted)). Defendant's school liberally excused his absences due to transportation failures. The evidence shows that defendant's

---

[1] Defendant also argues that the trial court impermissibly considered evidence that defendant failed to attend school without excuse in December 2014 and January 2015, but the trial court made clear during defendant's January 29, 2015 hearing that those absences were relevant only to the revocation of youthful-offender status. In any case, we must uphold the court's findings if "fairly and reasonably supported by any credible evidence," and the record provides ample evidence, apart from the absences in December 2014 and January 2015, to support the court's findings. Austin, 165 Vt. at 398, 685 A.2d at 1082 (quotation omitted).

unexcused absences, on which the trial court based its determination, resulted not from problems outside his control, but from defendant's failures to get the absences excused.

B. Failing to Comply with GPS-Monitoring Requirements

¶ 10.    The terms of defendant's probation required that he "follow the [Department of Corrections'] special conditions for sex offenders," which included that he must "submit to GPS monitoring as directed by [his] Probation Officer."  Defendant was informed how the GPS unit worked and that he must charge it for at least two hours each day.  When the unit's battery ran low, it would turn red and vibrate for ten to forty minutes before shutting down.  Defendant testified that the unit once vibrated for sixty minutes before it shut down.  The evidence shows defendant understood how to maintain the GPS battery and allowed it to remain uncharged on multiple occasions, causing it to shut off.  Based on this evidence, the court reasonably concluded that defendant violated his GPS-monitoring requirements.

¶ 11.    Defendant argues the State's evidence that he failed to charge the GPS unit was hearsay.  Defendant concedes he did not object when the evidence was admitted.  In fact, defendant testified to repeated shut-downs and  introduced evidence of shut-downs on August 10, 2014, for fifty minutes and on August 11 and 12, 2014, for thirty-one hours.  Defendant cannot claim error for evidence he introduced.  See State v. Massey, 169 Vt. 180, 185-86, 730 A.2d 623, 627 (1999) ("We have addressed claims of error based on evidence introduced by the aggrieved party and held that the party must assume the responsibility for whatever prejudice to his case derived from this evidence." (quotation omitted)).  Moreover, defendant did not preserve his objection in the trial court proceedings, and we find no plain error, if any error at all, in its admission.  State v. Gauthier, 2016 VT 37, ¶¶ 9-10, 201 Vt. 543, 145 A.3d 833 (applying plain-error review where probationer failed to preserve challenge to probation conditions).  Because defendant presented the contested evidence, he cannot show the admission affected his substantial rights or resulted in prejudice against him.  See id. ¶ 10 (finding plain error only when error "affects substantial rights and results in prejudice to the defendant"); State v. Willis, 145 Vt. 459, 480, 494 A.2d 108, 119-20 (finding

5

trial court did not commit plain error when defendant objected to waiver of psychiatrist-patient privilege he himself had advocated during trial, stating, "we cannot find that the . . . claimed error could form a reasonable basis for a fear that injustice has been done" (quotation omitted)).[2]

¶ 12.     Defendant also argues the evidence does not show defendant willfully allowed his GPS battery to shut down.  See Anderson, 2016 VT 40, ¶ 13 (determining conduct willful if it is "the result of intentional conduct" and not "by accident, mistake, or inadvertence" (quotation omitted)).  It is defendant's burden to show his actions were not willful, and he did not meet that burden here.  Austin, 165 Vt. at 398, 685 A.2d at 1082.  Nothing in the evidence indicates that accident or mistake caused the shut-downs, rather than defendant's intentional conduct.

### C.  Failing to Participate in the Restorative Justice Panel

¶ 13.     Defendant was required to "appear before the Restorative Justice Panel and actively participate and complete all of the conditions set by the Panel."  In July 2014, defendant attended an intake meeting for the Restorative Justice Panel in Springfield, Vermont, as his probation officer ordered.  After he told his version of the events underlying his conviction, he was asked "when the sex happened between him and the victim," and he said he could not remember.  The Panel's director attended the meeting, and she told defendant she personally knew the victim; it is unclear whether she discussed the victim before or after he told his story.  The Panel employees determined that defendant refused to take responsibility for his offense, which is a prerequisite for participating in the Panel, and they informed him that failure to participate would constitute a violation.  They offered defendant two days to reconsider his answer.  Two days later, defendant left a voice message with the Panel stating that he would not participate in the program without speaking to his lawyer and that he would only attend meetings with his parents and at times convenient to his parents.  Later that day, the Panel employees wrote a letter to defendant's probation officer stating

_____

[2]  Because defendant introduced sufficient evidence to support the trial court's conclusion that he violated his GPS-monitoring requirements, we need not address his arguments that the trial court's admission of shut-down reports prepared by individuals who did not testify at the hearing amounted to plain error.

6

that he could not participate in the program because he refused to take responsibility for his offense. When defendant and his probation officer discussed the Panel's decision, defendant said he was uncomfortable with the director's personal relationship with the victim, and he asked to participate in a Hartford Restorative Justice Panel, instead. The probation officer refused, reasoning that it was most "effective" to "go back to where the crime happened to repair the crime."

¶ 14. Defendant's Panel participation was an express condition that he has not met, and he does not argue otherwise. Instead, defendant argues that his failure to participate was due to the Panel's refusal to work with him, rather than his own willful noncooperation. He also argues he could not be cited for violating the condition so early in his probationary term. [3]

¶ 15. We disagree. We have repeatedly found that a probationer's failure to participate in an assigned program constitutes noncompliant action by the probationer.[4] See Austin, 165 Vt. at 399-400, 685 A.2d at 1083-84 (summarizing cases upholding violations where evidence showed defendant's "willful conduct had led either to actual discontinuation of treatment by the therapist or to a determination that continued treatment would be futile"). For example, in State v. Provost, the intake counselor for the probationer's court-ordered therapy program told the defendant that he could not complete the intake because he claimed he did not commit the offenses underlying his conviction. We held that the "defendant's own actions . . . prevented him from completing the

---

[3] The State argues that defendant failed to preserve this argument below, and therefore we should not consider it. Defendant argues that according to State v. Blaise, a defendant preserves a sufficiency-of-the-evidence argument in a probation-violation hearing by contesting the violation. 2012 VT 2, ¶ 21 n.4. We need not decide the issue because we find no error. See Gauthier, 2016 VT 37, ¶¶ 9-10 (applying plain-error review where probationer failed to preserve his challenge to his probation conditions and finding plain error only where there is error).

[4] Defendant emphasizes that his probation officer refused to allow him to participate in a Restorative Justice Panel in Hartford, rather than Springfield, and therefore he was "not permitted to comply" with the condition. The trial court found, apparently in response to this argument, that defendant made no effort to address that concern with the Panel employees, and it concluded that defendant's failure to participate was willful. Defendant has failed to show the probation officer's instructions were improper or unreasonable, and we see no reason to disturb the court's finding. See State v. Moses, 159 Vt. 294, 300, 618 A.2d 478, 481-82 (1992) ("[W]e have enforced conditions where probation officers are given discretion to implement conditions imposed by the court.").

intake that day." 2014 VT 86A, ¶ 16; see also State v. Gleason, 154 Vt. 205, 209, 216, 576 A.2d 1246, 1248-49 (1990) (holding probationer violated counseling requirement when psychotherapist discontinued therapy after probationer repeatedly refused to discuss sex-related issues); State v. Foster, 151 Vt. 442, 447, 561 A.2d 107, 109 (1989) (holding defendant responsible for violation when "psychologist indicated that no further appointments or meetings were necessary or appropriate as a result of defendant's refusal to cooperate in discussing the offense").

¶ 16.    Moreover, once the probationer has actively refused to participate, a violation finding is not "premature," even if time remains in which to complete the program.[5]  See, e.g., Provost, 2014 VT 86A, ¶¶ 1-2 (upholding violation for failure to complete program intake when three months remained in twelve-month probationary period); Gleason, 154 Vt. at 208-09, 576 A.2d at 1248-49 (upholding violation for failure to participate in treatment program seven months after probationary term began and more than five months before term would end).  Our decisions have focused on the probationer's active noncompliance, not the possibility that the probationer could change his or her mind before the probationary term ended.  Cf. Austin, 165 Vt. at 400, 685 A.2d at 1083 (refusing to uphold violation finding because "trial court made no finding that defendant's difficulty in translating . . . therapy into everyday practice amounted to willful noncooperation on the part of defendant," and "[a]bsent such a finding, the conclusion that defendant had violated [the condition] was premature").

¶ 17.    Defendant's reliance on State v. Blaise, 2012 VT 2, is unavailing.  In Blaise, we reversed a violation finding as premature where the probationer had failed to pay his required fines and there was considerable time remaining in his probationary term.  Id. ¶ 23.  But Blaise is not

---

    [5] The dissent interprets our argument here as saying that "in the absence of any express timing requirements in the probation condition itself, a requirement that a condition be completed at the beginning of the probation period is clearly implied." Post, ¶ 29.  This is incorrect.  We are saying that once a probationer refuses to comply with a condition, the fact that time remains in which he could complete the condition is not relevant to whether the court can find a violation. Defendant did not violate his probation by not initiating participation in the first week of probation; defendant violated his probation by refusing to participate after he was ordered to do so.

analogous. First, unlike in this case, the probationer in Blaise did not refuse to pay the fines; he simply did not pay them. Id. Second, the probation officer in Blaise was authorized to set a payment schedule but did not; the probation officer made no communications whatsoever regarding the fines prior to the violation citation. Id. Essentially, the certificate predicated payment on a communication that never took place. Id. In contrast, in this case, not only did defendant's probation certificate explicitly require participation, the probation officer ordered defendant to attend the Springfield Restorative Justice Panel, and the Panel employees and defendant's probation officer informed him what participation was required and that failure to participate could constitute a violation. Defendant never asked for more time or gave any indication that he was unaware that participation as ordered was required. We also note that the probation officer had already filed two probation violation complaints before filing the complaint based on defendant's failure to participate. We may presume defendant was fully aware of the consequences of noncompliance.

¶ 18. Most importantly, refusing to participate in court-ordered programming is significantly different from simply failing to pay a fine. Participation in the Restorative Justice Panel had a rehabilitative purpose that was central to defendant's treatment and the purpose of the youthful-offender program. See 33 V.S.A. § 5101(a)(2) (stating purpose of juvenile statutes is "to provide supervision, care, and rehabilitation which ensure" public safety, accountability, and ability of juvenile offenders to "become responsible and productive members of the community"); In re P.M., 156 Vt. 303, 310, 592 A.2d 862, 865 (1991) (stating rehabilitative purpose of juvenile statutes "can only be accomplished when children who have committed acts offensive to community standards and proscribed by our laws are held accountable for their actions so that they can be required to participate in appropriate treatment programs"). Whether a probationer engages in a program at the beginning or end of the probationary term could affect his or her overall treatment and success in the program, and refusing to participate can call into question the probationer's commitment to rehabilitation. Cf. Lawson v. State, 969 So. 2d 222, 235 (Fla. 2007)

9

(upholding probation violation despite lack of specific time parameters for participation in treatment program because "a probationer who has been given the privilege of being placed on probation, <u>in lieu of serving jail time</u>, is put on adequate notice that the treatment program should be undertaken at the beginning of the probationary period" or risk violation). The record supports the court's conclusion that defendant violated his requirement to participate in the Restorative Justice Panel, and we decline to disturb the court's determination.

## II. Revocation of Youthful-Offender Status

¶ 19.    In addition to challenging the three violations, defendant challenges the trial court's decision to revoke his youthful-offender status. When a trial court finds that a youthful offender has violated his or her probationary terms, the court "may . . . revoke the youth's status as a youthful offender." 33 V.S.A. § 5285(c)(2). The court may also modify the probationary conditions or transfer supervision to the Department of Corrections. <u>Id</u>. § 5285(c)(1), (3). Defendant challenges both the standard the trial court used to determine whether to revoke youthful-offender status and the decision itself.

### A. Standard for Revocation of Youthful-Offender Status

¶ 20.    The youthful-offender statute does not provide factors the court should use in deciding whether to revoke youthful-offender status. See 33 V.S.A. § 5285(c)(2) (authorizing revocation but not providing standard). The trial court therefore adopted the standard the Legislature provided for determining whether to grant youthful-offender status in the first place. See 33 V.S.A. § 5284(a), (b) (requiring court to consider public safety, probationer's amenability to treatment, and services available for rehabilitation in deciding whether to grant youthful-offender status). In arguing that this was error, defendant attempts to distinguish a youth's situation at the time of the grant from his situation when facing revocation. He argues that revocation, unlike the grant, entails the "loss" of statutory "protections," and therefore the court must weigh that loss in its revocation decision.

10

¶ 21.   We disagree.  The Legislature expressly provided factors it intended the court to consider when assessing whether youthful-offender status will be appropriate and effective: public safety, amenability to treatment, and sufficient services for rehabilitation.  33 V.S.A. § 5284(a), (b); see Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.) ("In construing statutes, courts have a duty to ascertain and effectuate the intent of the Legislature . . . ." (citation omitted)). Despite defendant's arguments to the contrary, we see no significant difference in a youth's situation when youthful-offender status is granted from when it is revoked.  There is no reasonable basis for this Court to craft an alternative standard to the one the Legislature adopted.  Cf. Harris, 167 Vt. at 614, 708 A.2d at 1350 (refusing to alter scope of statute because Legislature expressed no intent to do so, stating "great care should be exercised by the court not to expand proper construction of a statute into judicial legislation" (quotation omitted)).  Indeed, defendant conceded in the trial court that the court would be on "strong ground" to base its decision on the factors for granting youthful-offender status, and that those factors are "the crux of how the court decides this case."  Cf. State v. Longe, 170 Vt. 35, 39 n.*, 743 A.2d 569, 572 n.* (1999) (holding under "invited error doctrine," a party may not "induc[e] an erroneous ruling and later seek[] to profit from the legal consequences of having the ruling set aside" (quotation omitted)).  The trial court did not err in applying to the revocation decision the same factors the Legislature provided for granting youthful-offender status.[6]

---

[6] The trial court noted that at the time of the revocation hearing, defendant was an adult, which it found relevant to whether youthful-offender status would protect public safety.  Defendant argues that considering his age was "contrary" to the Legislature's protective purposes and failed to properly weigh his "status as a youth."  We find this argument unpersuasive.  The Legislature requires the court to deny youthful-offender status if it is contrary to public safety.  33 V.S.A. § 5284(a).  In doing so, the Legislature decided that the protective purposes of the juvenile statutes and the offender's youth should not outweigh public safety, and we cannot re-order the Legislature's priorities.  See Judicial Watch, Inc. v. State, 2005 VT 108, ¶ 16, 179 Vt. 214, 892 A.2d 191 (2005) (stating this Court will not "substitute [its] policy judgments for those of the Legislature").  The court did not err in considering defendant's age in the context of public safety.

¶ 22.   Defendant challenges the trial court's revocation decision, arguing, among other things, that the court impermissibly weighed defendant's inadequate sex-offender therapy against him.  Whether a trial court revokes youthful-offender status is an exercise of discretion.  See 33 V.S.A. § 5285(c) (stating court "may" modify juvenile probation if court finds youth has violated his or her probation conditions); Marsigli Estate v. Granite City Auto Sales, Inc., 124 Vt. 467, 470, 207 A.2d 158, 160 (1965) (stating Legislature's use of "may" in statute indicates decision is discretionary).   Accordingly, we review the revocation decision for an abuse of discretion: "[D]ecisions regarding probation status are entrusted to the sound discretion of the trial court. . . . A trial court's ruling will not be set aside absent a finding of abuse of discretion."  State v. Lucas, 2015 VT 92, ¶ 16, 200 Vt. 239, 129 A.3d 646 (quotation omitted).  A court has abused its discretion if it has "failed to exercise its sound discretion or exercised it for clearly untenable reasons."  Id. (quotation omitted).  "Discretionary rulings will not be disturbed if they have a reasonable basis in the record, even if another court might have ruled differently."  State v. Dixon, 2008 VT 112, ¶ 27, 185 Vt. 92, 967 A.2d 1114.  Nevertheless, the court's discretion, "though broad, is not unbridled."  Id. (quotation omitted).

¶ 23.   We conclude that the revocation decision was an abuse of discretion.  Although the court concluded that defendant was not amenable to treatment based on multiple findings, the court failed to give sufficient weight to the one factor we consider most significant: defendant's inadequate sex-offender therapy.  Had it done so, it would not have revoked his youthful-offender status.  See Lucas, 2015 VT 92, ¶ 16 (stating to prove abuse of discretion, defendant must show court has "failed to exercise its sound discretion or exercised it for clearly untenable reasons." (quotation omitted)); cf. Blaise, 2012 VT 2, ¶ 27 (remanding case for resentencing because "[w]e cannot know what sentence the court might have imposed if it had found fewer probation violations").  The court found that defendant's probation officer assigned him to a therapist who was not qualified to provide sex-offender therapy and who "enable[d]" defendant's refusal to

accept responsibility for his offense. The court also observed that despite the confidentiality limitations of a youthful offender, "a more appropriate therapist could have been found to address [defendant's] needs as a sex offender" and the Department of Corrections "may have failed" in assigning defendant an inadequate therapist. However, the court concluded that defendant probably would still have issues of compliance, given "the inattention he gave several of his probation conditions, . . . his attitude toward probation, probation conditions, and his probation officer in general."

¶ 24. This conclusion does not align with the circumstances of this case. As a youthful offender, defendant should have received opportunities for treatment and rehabilitation as part of his juvenile probation. See 33 V.S.A. §§ 5281-5288. Given that defendant's underlying conviction was for a sex offense, it was particularly important that treatment include appropriate sex-offender therapy. Based on the court's findings, defendant was never offered adequate sex-offender treatment. His failure to rehabilitate while participating in inappropriate therapy hardly demonstrates that defendant was unamenable to treatment. See State v. Dixon, 2008 VT 112, ¶ 31 ("By weighing [the Department for Children and Family's] failings against the juvenile, the court improperly penalized the juvenile for the failings of a state agency over which he had no control."); State v. Bubar, 146 Vt. 398, 405, 505 A.2d 1197, 1201-02 ("Compliance with probation terms may not be put beyond the probationer's control."). We find too speculative the court's prediction that defendant would have violated his probation conditions even if he had received appropriate sex-offender therapy. Accordingly, we hold that the trial court exceeded its discretion in revoking defendant's youth-offender status based, in part, on defendant's inadequate sex-offender therapy. In determining whether defendant is amenable to rehabilitation on remand, the court should give proper consideration to the adequacy of defendant's treatment.

¶ 25. We acknowledge that remanding this case presents some procedural difficulties. Defendant is now older than twenty-two years old, and the statute permits participation in the youthful-offender program only until age twenty-two. 33 V.S.A. § 5286(d) ("If the Court finds

13

that it is in the best interest of the youth and consistent with community safety to continue the case past the age of 18, it shall make an order continuing the Court's jurisdiction up to the age of 22."). An appropriate solution to the procedural dilemma will depend on an updated record, reflecting, for example, whether defendant is currently on adult probation and what treatment he has received. We do not have that record. In addition, neither party raised or briefed this issue. We therefore restrict our opinion to those issues raised by the parties and supported by the record before us. See State v. Settle, 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982) (stating Court will not consider unbriefed issues except in exceptional circumstances).

We affirm the violations of probation for failing to attend school without excuse; failing to comply with defendant's GPS-monitoring requirements; and failing to participate in the Restorative Justice Panel. We reverse the superior court's decision to revoke defendant's youthful-offender status. We remand to the criminal division of the superior court with instructions to transfer the case to the family division for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Chief Justice

¶ 26.    **ROBINSON, J., concurring in part, dissenting in part, and concurring in the mandate.**  Although I concur in the majority's assessment of the school and GPS-monitoring conditions, and defendant's violation thereof, I part ways on both the law and the facts with respect to its analysis of defendant's claimed violation of the requirement that he complete a restorative justice program. In particular, I do not concur in the majority's description of the applicable law, and I part ways on the facts insofar as the majority concludes that defendant's conduct amounted to a refusal to comply in this case. Because I conclude that the trial court's determination that defendant violated this condition was error, I would reverse and remand on that basis.

¶ 27.    On the law, I disagree with the majority's suggestion that in the absence of any specific requirement concerning the time within which a probationer is expected to complete a probation condition, as a matter of law the probationer risks violation of the probation condition

14

by not commencing to comply with the condition at the beginning of the probationary period. Ante, ¶ 18. Due notice that an act, or a failure to act, constitutes violation of the terms of probation is an essential precondition to a determination that a probationer has violated those terms. Accordingly, where the probation certificate sets no time for commencement or completion of a particular required task—whether programming, payment of restitution, or some other such task— and ample time remains in the probation period for completion of the task, a probationer cannot be deemed to have violated the condition unless the probation officer provides notice that the probationer must comply with the condition by a certain time, or unless the probationer, by words or deeds, manifests an intention to refuse to complete the task.[7]

¶ 28.   That a defendant can only be punished for violating probation after due notice of the expectation giving rise to the violation is well established in Vermont. "[D]ue process requires that a convicted offender be given fair notice as to what acts may constitute a violation of . . . probation, thereby subjecting [the probationer] to loss of liberty." State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988). A probationer has fair notice only of conditions that are "express" or "so clearly implied that the probationer, in fairness, can be said to have notice of [them]." State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (quotation omitted). The State bears the burden of showing that defendant had fair notice of a condition. State v. Provost, 2014 VT 86A, ¶ 15, 199 Vt. 568, 133 A.3d 826.

¶ 29.   I reject the majority's suggestion that in the absence of any express timing requirements in the probation condition itself, a requirement that a condition be completed at the beginning of the probation period is clearly implied. I can easily think of many reasons why it may not make sense for a probationer to complete a particular task at the very beginning of a lengthy probation period. It may make sense for a probationer to find housing before looking for

---

[7] My analysis here applies only to conditions that require a probationer to affirmatively complete a task, such as programming, rather than conditions that prohibit specified conduct and accordingly apply throughout the entire period of probation.

a job, if both are required; it may make sense for a probationer to complete a substance abuse assessment before beginning counseling, if both are required. And a probationer may need time to marshal the resources to pay a restitution obligation. In fact, defendant's probation officer testified that he did <u>not</u> want to focus on getting defendant into a restorative justice program immediately at the beginning of his probation. Instead, he said he wanted to "hold off on that for a little bit to get [defendant] acquainted to probation," and that his real focus at the outset of the probation was to get defendant into counseling and school. This record belies the suggestion that a "start immediately" requirement is implicit in probation conditions that do not specify a time for completion.

¶ 30.     That isn't to say that a probation officer can never put a defendant on notice of an expected time frame. This Court has upheld a probation violation determination for failure to complete programming when ample time remained in the probation period to allow for completion of that programming and the defendant had been expressly notified by the probation officer that completion within a specified time frame was expected. In <u>Provost</u>, for example, this Court applied plain error review in rejecting the defendant's argument that he could not be deemed to have violated the requirement that he complete a domestic violence program eight months into his probation, when the State could not show that he could not have completed the program by the end of his probationary term. 2014 VT 86A, ¶¶ 13-17. In doing so, the Court emphasized that the defendant "was specifically informed by his probation officer that he must complete the third scheduled intake for [the program] or he would be cited for violating probation." <u>Id</u>. ¶ 15.

¶ 31.     Moreover, I agree with the majority that where a defendant indicates an intention to <u>not</u> complete the task or programming required by the probation condition, a court may find a violation. As the majority notes, we have concluded that a probationer's <u>repeated</u> refusals to discuss sex-related issues with his psychotherapist supported a determination that he had violated the counseling requirement in his probation conditions. <u>State v. Gleason</u>, 154 Vt. 205, 216, 576 A.2d 1246, 1258-59 (1990); see also <u>ante</u>, ¶ 15. And where the court ordered a probationer to

16

complete a mental health screening by a date certain, and defendant then missed two out of three appointments for the screening and refused to discuss the details of his offense at the appointment he kept, we concluded the trial court's violation determination was supported by the evidence. State v. Foster, 151 Vt. 442, 446-47, 561 A.2d 107, 109 (1998); ante, ¶ 15; see also Peck, 149 Vt. at 620-21, 547 A.2d at 1331 (affirming probation violation determination where defendant attended counseling sessions and continued to refuse to admit sex-related misconduct after a series of warnings that he must do so).

¶ 32.    That there is no implied requirement of immediate performance of probation conditions is consistent with our case law. In State v. Blaise, we considered a probation violation complaint against a defendant who had not paid certain fines pursuant to the probation order. 2012 VT 2, 191 Vt. 564, 38 A.3d 1167. Given the time remaining in the defendant's probationary term, we reversed the trial court's violation determination, explaining:

> Defendant was on probation for two years, from October 2007 to October 2009. The probation condition authorized the probation officer to set a payment schedule for repayment during that period. The probation contract itemized the amount defendant owed but failed to establish a payment schedule. There was no testimony that a payment schedule was established. In the absence of a payment schedule, and well before the expiration of defendant's probation, there was no support for the claim that defendant had violated the probation condition by failing to make a payment before the VOP complaint was filed. We cannot find a violation.

Id. ¶ 23. By distinguishing Blaise on the basis that the probation officer in that case had not communicated any fine repayment schedule, and there was no evidence that the defendant had refused to pay them, the majority implicitly concedes that in the absence of one of these two factors, the mere failure to complete a task required by a probationer's conditions cannot support a probation violation complaint when ample time remains in the probationary term for those payments.

¶ 33.    That leads to my second major disagreement with the majority: I take issue with its characterization of the record in this case. There is no dispute that there was ample time for

17

defendant to complete the restorative justice program requirement of his probation; the probation violation complaint came five months into his two-year probationary term, and the restorative justice program was a three-month program.

¶ 34.   Nor is there any evidence that defendant's probation officer notified him that completion of the program earlier than the end of the probationary term was required.  To the extent the majority suggests that defendant's probation officer informed him that failure to complete the intake for the restorative justice program at the time of defendant's initial meeting with program staff could constitute a violation, ante, ¶ 17, the record does not support this assertion.  Defendant went to an intake meeting for the restorative justice program on July 28.  At that time, the representatives of the program asked him to go home and think about what happened and to call them back by July 30 at 8 a.m. to continue the intake.  They—not defendant's probation officer—told him that failing to complete the program would result in a probation violation. Defendant left them a voicemail before the appointed time indicating that he wanted to speak with his lawyer before signing anything, and that he needed to meet after 4:00 p.m. so his parents could attend.  That same day, the Restorative Justice Panel wrote defendant's probation officer declining to accept him into their program.  Defendant's probation officer testified that he met with defendant on August 4 and informed him that he was filing a violation of probation complaint, which he did the next day.  The probation officer did not testify that defendant was required to complete the program by a set time, that he instructed defendant to contact the restorative justice program to request another intake opportunity, or that he gave defendant any other opportunity to try to reengage with the restorative justice program.  In fact, the probation officer's only testimony concerning his communications about the timing of the restorative justice programming was that at the beginning of the probationary period the probation officer wanted to hold off on the restorative justice requirement in order to focus on other programming.

¶ 35.   Nor does the evidence support the conclusion that defendant refused to engage in the restorative justice programming.  This is not like the cases cited above in which a defendant in

18

programming repeatedly declined to take responsibility for criminal actions, or failed to do so after repeated warnings that such failure would lead to a violation complaint. See supra, ¶ 31. In this case, defendant failed to admit his criminal actions during his initial intake session, was afforded an opportunity to think about his actions, and then indicated that he wanted to talk with his lawyer before proceeding further. He said nothing to suggest that he did not intend to reengage after consulting with his lawyer. He did not fail to take responsibility after multiple warnings. He did not repeatedly deny responsibility over a course of time. There isn't even any evidence that he dragged his feet in conferring with his lawyer. Defendant's probation officer filed a probation violation complaint a week after defendant's unsatisfactory intake session without giving defendant any opportunity to talk with his lawyer or to reengage with the restorative justice program. Where defendant was given time to reflect on his answers to the restorative justice program's intake questions, and then indicated that he wanted to talk to his lawyer before proceeding, I do not believe the record can support the conclusion that defendant has indicated by words or actions that he will not timely complete the required programming.

¶ 36. Because I believe the trial court erred in concluding that defendant violated the restorative justice panel condition, and because this violation was central to the trial court's decision to revoke defendant's youthful offender status, I would reverse the revocation as well as the violation and remand for further proceedings.

 

                              _____

                              Associate Justice